JANIE S. MAYERON, United States District Court
The above matter came before the undersigned on the following motions: Plaintiffs' motion to Compel Discovery of the Identities of John Doe Defendants [Docket No. 167]; Plaintiffs' Motion for Leave to File a Third Amended Complaint [Docket No. 230]; LadyFree28's Motion for a Protective Order [Docket No. 189]; and Plaintiffs' Motion to Supplement the Record [Docket No. 251]. Richard L. Ravin, Esq. and Paul A. Grote, Esq. appeared on plaintiffs' behalf. John D. Reddall, Esq., Justin Taylor Quinn, Esq. and Keith John Miller, Esq. appeared on defendants' behalf. John Doe LadyFree28 is self-represented and did not appear at hearing.[1] John Doe duskyjewel is self-represented and did not appear at the hearing. The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, and for the reasons described in the Memorandum below now makes and enters the following Order.
IT IS HEREBY ORDERED :
1. Plaintiffs' Motion to Compel Discovery of the Identities of John Does [Docket No. 167] is DENIED in part as MOOT and DENIED in part on the merits.
2. ATP's request that it be allowed to conduct further discovery pertaining to the identities of the John Does based on information obtained from ATP's current and future discovery requests without requiring further orders of the Court is DENIED.
*648 3. LadyFree28's Motion for Protective Order [Docket No. 189] is DENIED .
4. Plaintiffs' Motion for Leave to Serve a Third Amended Complaint [Docket No. 230] is GRANTED. Plaintiff shall immediately serve and file its Third Amended Complaint consistent with this Order. Defendants shall respond in the time described by the Federal Rules of Civil Procedure.
5. Plaintiffs' Motion to Supplement the Record [Docket No. 251] is DENIED.
MEMORANDUM
I. MOTION TO COMPEL DISCOVERY OF IDENTITIES OF JOHN DOE DEFENDANTS [Docket No. 167]
A. Introduction
Plaintiffs East Coast Test Prep, LLC, d/b/a Achieve Test Prep and Mark Olynyk (collectively, "ATP") have been seeking since the inception of this suit to learn the identity of five individual defendants who go by the user names of JustBeachyNurse, monkeyhq, LadyFree28, duskyjewel and Pixie.RN (collectively, "John Does") and who ATP claims posted defamatory comments on a website maintained by defendant Allnurses.com, Inc. ("Allnurses"). Recently, ATP has learned the identity of three of the five John Does (LadyFree28, duskyjewel and Pixie.RN), but still does not know the identity of the remaining two posters (JustBeachyNurse and monkeyhq). Allnurses knows the identity of JustBeachyNurse, but does not know the identity of monkeyhq. See Declaration of Richard Ravin filed on December 21, 2016, Ex. A-1 (Defendants' Amended First Set of Answers to Plaintiffs' First Set of Interrogatories) at pp. 3-4 (Answer to Interrogatory No. 1(ii) ) [Docket No. 254-1]. ATP believes that Allnurses possesses the Internet Protocol ("IP") addresses for each session when a John Doe posted comments on the Allnurses' website. Additionally, Allnurses has stated that it has information on one or more of its database files containing personal identifying information for each John Doe. Id., pp. 5-6 (Answer to Interrogatory No. 1(iii) ). ATP now seeks an order from this Court requiring Allnurses to reveal the identifying information, including the IP addresses, it possesses for JustBeachyNurse and monkeyhq. ATP intends to use this information to identify the third-party Internet Service Providers ("ISPs") and the Online Service Providers ("OSPs") used by these John Does when they made their postings.[2] Armed with that information, ATP will then serve subpoenas on these ISPs and OSPs to learn the identities of JustBeachyNurse and monkeyhq.
Allnurses has objected to revealing any identifying information in its possession, including IP addresses, which could ultimately lead to the discovery of the identity of the John Doe posters, claiming that each such poster has a right under the First Amendment to speak anonymously and Allnurses should not be required to *649 divulge this protected information in contravention of their rights. Two posters, LadyFree28 and duskyjewel, have also objected to ATP's efforts to obtain identity information from Allnurses. Today, this Court decides that ATP has not met its burden to obtain the identifying information regarding JustBeachyNurse and monkeyhq in the possession of Allnurses. Further, the Court concludes that ATP's motion to compel this identifying information from Allnurses as to LadyFree28, duskyjewel and Pixie.RN is moot as ATP already knows their identity.
B. Factual Background
The facts upon which ATP relied to support its motion to compel and that are relevant to the instant motions are set forth in the Second Amended Complaint ("SAC") and the declarations submitted on behalf of ATP by Richard Ravin, counsel for ATP, Mark Olynyk, plaintiff and owner of ATP, and James Roberts, Ph.D., an expert retained by ATP to opine on damages suffered by ATP as consequence of the alleged defamatory statements made by the John Does. See Docket Nos. 97, 159-161. These facts are as follows.
ATP provides test preparation services for individuals seeking entry into various careers, including nursing. SAC, ¶ 19; Declaration of Mark Olynyk ("Olynyk Decl."), ¶ 5 [Docket No. 159]. Allnurses is a Minnesota corporation founded by Brian Short.[3] SAC, ¶¶ 3, 5 (collectively, "Allnurses"). ATP is not a college and does not issue degrees or give college credit. Id., ¶ 27; Olynyk Decl., ¶ 8. Instead, ATP's services are designed to prepare nursing students for standardized exams that enable them to get full credit for college courses without taking the courses, a process known as credit-by-examination. SAC, ¶ 28. The standardized exams are given by an independent college or an independent testing center, and enable the student to earn credit towards a nursing degree such as a Bachelor of Science in Nursing or Associates of Science in Nursing from such college. Id., ¶¶ 27, 29; Olynyk Decl., ¶ 9. This credit-by-examination method allows a student to "test-out" of certain required courses for a particular college to satisfy the credit requirements of the schools, and thus, save the student time and money by not having to pay for and take the required courses at the college. SAC, ¶ 63.
Excelsior College is one of the colleges for which ATP provides test preparation classes, as well as many other accredited colleges throughout the country. SAC, ¶ 62. Generally, students seeking a degree from colleges such as Excelsior College choose to either (i) enroll in a college, register for courses and attend classes for those courses with the goal of passing those courses and earning credit towards their degrees, or (ii) enroll in a test preparation program such as ATP and then challenge and pass the college equivalency exam. Id., ¶ 71. By enrolling in a college and taking courses, the students pay tuition, the amount of which is often determined by the number of course credits being taken by the student. Id., ¶ 72.
Excelsior College offers its students the option to earn credit-by-exam, and it also offers test preparation programs. SAC, ¶ 65 (citing SAC, Ex. A, pp. 37-40 (Screen Shot Set 10) ). ATP also provides test preparation programs for these test-out exams. Id., ¶ 70. By enrolling in a test preparation program such as that offered by ATP, students can save time and money because the test preparation programs usually cost less, and require less time, than enrolling in a course and completing all the course work that goes along with a *650 regular college course. Id., ¶ 73. Excelsior College is a competitor of ATP because each competes for education dollars to be spent by students in pursuit of degrees. Id., ¶ 74.
Excelsior College announced on its website at URL http://www.excelsior.edu/nursing-theory-examination-changes that beginning in July 2015, it would offer registrations for its test-out exam preparation for its nursing degrees to start in Fall 2015. SAC, ¶ 75 (citing SAC, Ex. A, pp. 37-40 (Screen Shot Set 10) ).
Allnurses runs a website at "allnurses.com" which describes itself as "the collective voice of the nursing community, supporting the profession by providing a place where nurses can network, share and learn from their peers." (http://allnurses.com/aboutus-info.html, accessed on March 2, 2015). SAC, ¶¶ 4, 31; Olynyk Decl., ¶ 10. This website provides a platform for its members to post comments or questions and receive feedback and responses from members on a range of topics in the field of nursing, including but not limited to education and required coursework or exams for licensure. SAC, ¶ 34; Olynyk Decl., ¶ 14.
To post a comment or participate in the online discussion on the Allnurses' website, a user must register with Allnurses, but Allnurses' Terms of Service ("TOS") do not require registrants to use their real or legal names or to reveal their true identities when they register to use the website. SAC, ¶¶ 35, 78, 81; Olynyk Decl., ¶ 15. Rather, to register as a member on Allnurses, a user must create a unique username and provide a password, an e-mail address and check a box that states "I'm not a robot". SAC, ¶ 77 (citing SAC, Ex. A, pp. 43-44 (Screen Shot Set 12) ). The TOS also includes the following provisions governing the operation of the website by Allnurses and its members posting on the discussion boards:
(1) "We promote the idea of lively debate. This means you are free to disagree with anyone on any type of subject matter as long as your criticism is constructive and polite."
(2) "You are not allowed to post libelous information about a person, school, instructor, health care facility, or entity."
* * *
(4) "Any post which is violative of any law or is invasive of a person's privacy will be taken down immediately."
(5) "You will enjoy a great deal of freedom here, with the ability to freely debate upon a number of subjects, as long as you remain civil and polite to each other."
Id., ¶ 89 (citing SAC, Ex. A, pp. 54, 57 (Screen Shot Set 13) ).
Members of Allnurses are permitted to create discussion threads on the website discussion boards or publish comments on existing threads. SAC, ¶ 36; Olynyk Decl., ¶ 16. Discussion threads are initiated in pre-established forums on allnurses.com. SAC, ¶ 37. The Allnurses website hosted a discussion thread titled: "Achieve Test Prep.... anyone?" located at URL: http://allnurses.com/excelsior-college-online/achieve-testprep-815067.html. Id., ¶ 54 (citing SAC, Ex. A, pp. 58-82 (Screen Shot Set 14) ); Olynyk Decl., ¶ 18. The "Achieve Test Prep ... anyone?" thread appeared in the "Excelsior College Online Nursing" forum. SAC, ¶ 55; Olynyk Decl., ¶ 19. As of the date the SAC was filed (January 22, 2016), the "Achieve Test Prep ... anyone?" thread remained viewable on the Allnurses website. SAC, ¶ 56; Olynyk Decl., ¶ 20.
The thread entitled "Achieve Test Prep ... anyone?" was created on February 12, 2013, by poster Heavenly4505. SAC, ¶ 110. The thread consists of an extended discussion about the advantages and disadvantages *651 of using ATP's test preparation services in conjunction with Excelsior's RN program. Id., ¶ 111. The thread had a large number of posts by many different Allnurses' members over a long period of time. Id., ¶ 115. The posts alleged by ATP to be defamatory and at issue in this law suit are as follows:
On February 12, 2013, Pixie.RN, stated in response to Heavenly4505's post:
EC warns students about third-party publishers and test prep companies-they are not affiliated with EC, nor does EC endorse their use (http://www.excelsior.edu/about-test ... ation-services). EC's program is set up to provide an outline/syllabus for each class in the form of a free exam content guide that you can download.
* * *
I'd advise you to think twice before you add a lot of money to the bottom line of your education bill! Good luck, whatever you decide.
SAC, ¶ 165 (citing SAC, Ex. A, p. 60 (Screen Shot Set 14) ) (emphasis in original).
In response to a post by hardworkinggrn2, on August 22, 2014, JustBeachyNurse stated:
ATP and similar services will be redundant as of July 1, 2014 when all challenge exam candidates will be mandated to take the Excelsior online exam prep classes prior to becoming eligible to sit the challenge exams. [4] The prep classes are not free (though prep class plus challenge exam should cost less than the online courses)[.]
SAC, ¶ 121 (citing SAC, Ex. A, p. 61 (Screen Shot Set 14) (emphasis in original) ).
User monkeyhq responded the same day to JustBeachyNurse's post:
As Beachy said, Test Prep companies for Excelsior Exams will be obsolete by July 1, 2015; so unless you plan to finish EVERYTHING by that time, it is a total waste of your investment.
SAC, ¶ 118 (citing (http://allnurses.com/excelsior-college-online/achieve-test-prep815067-page3.html, accessed on March 10, 2015) (emphasis in original) ).
On September 12, 2014, LadyFree28 posted the following on the "Achieve Test Prep ... anyone?" thread:
But the discussion is about THIS particular test-prep program that IS being investigated by the federal government and is under a current lawsuit; there are too many forums that have stated the Achieve "deceived" them with their practices; that is the MAIN focus of this discussion, NOT "other test prep companies."
SAC, ¶ 169 (emphasis in original).
On September 12, 2014, duskyjewel also posted to the "Achieve Test Prep.... anyone?" thread, stating that ATP was under federal investigation. SAC, ¶ 175. duskyjewel's post was in direct response to a post from learning-is-good, which had stated: "Duskyjewel, You are going to scare people by saying some test prep centers are under federal investigation, but my guess is it's just one." Id., ¶ 176. In response, duskyjewel posted: "Sounds like you should be scared. TCN + Achieve equals more than one." Id., ¶ 177.
ATP claimed that all of these statements by the John Does were false. For example, Pixie.RN's statement that Excelsior College warns about using third-party test prep companies and promotes Excelsior *652 College, is false because Excelsior College did not "warn" students about third-party publisher test preparation companies. SAC, ¶ 166; Reply Declaration of Mark Olynyk ("Olynyk Reply Decl."), ¶ 4(q) [Docket No. 214].[5]
Likewise, JustBeachyNurse's statement that ATP's services would be redundant as of July 1, 2014, and monkeyhq's statement that "Test Prep companies for Excelsior Exams will be obsolete by July 1, 2015 ... it is a total waste of your investment," were false. SAC, ¶¶ 118 (emphasis in original), 120, 123, 159; Olynyk Decl., ¶ 21. ATP alleged that there were material differences between ATP and Excelsior College test preparation instruction rendering ATP's test preparation not be redundant to Excelsior College's services or obsolete. SAC, ¶ 124. For example, ATP offers live instruction for its test preparation, while Excelsior College does not, and ATP students are provided with ATP's "911 support," where a student can request extra help in preparing to pass an exam, such as free course retakes, free refresher courses, and free one-on-one customized tutoring from an instructor. Id., ¶ 125.
Further, as of the date of the posts by JustBeachyNurse and monkeyhq, on August 22, 2014, and as of the date when ATP filed its First Amended Complaint (on May 7, 2015), the test preparation requirements for Excelsior College general education courses remained unchanged, and therefore, ATP's general education test preparation was not obsolete or redundant. Id., ¶¶ 126, 127; see also Olynyk Reply Decl., ¶ 4(k) ("At the time that the 'redundant' comment (on August 22, 2014 by JustBeachyNurse) and 'obsolete' and 'total waste of investment' comments (on August 22, 2014 by monkeyhq) were posted on the allnurses.com thread, those statements were false because it was not true that ATP's services would be obsolete, redundant or a total waste of investment as a result of any then-existing or changed policies, rules or criteria of Excelsior College."); ¶ 4(o) ("ATP had planned to continue to offer test prep services for nursing and general education classes at Excelsior College for all time relevant to the Second Amended Complaint, because Excelsior College did not announce any policy, rule or criteria that would have made any of ATP's test prep services obsolete, redundant or a total waste of investment.").
Additionally, by "liking" monkeyhq's post (which referenced JustBeachyNurse's post), Pixie.RN endorsed, approved, ratified, restated and republished the false and misleading statements posted by poster monkeyhq and JustBeachyNurse on August 22, 2014. SAC, ¶¶ 114 (citing SAC, Ex. A, p. 10 (Screen Shot Set 4); p. 62 (Screen Shot 14) ), 151-157.
Pixie.RN was a Senior Moderator working for Allnurses and was in charge of the discussion thread on the allnurses.com website, "Achieve Test Prep.... anyone?" thread. SAC, ¶¶ 97, 100. Pixie.RN has posted about Excelsior College and was considered an expert on all matters pertaining to Excelsior College in the Allnurses community, such as whether ATP's services would be "obsolete" or "redundant." Id., ¶ 148. When a Senior Moderator such as Pixie.RN "likes" a post, it is interpreted by the online community as endorsing the post on Allnurses' behalf. Id., ¶ 136. Pixie.RN's *653 "like" is tantamount to an endorsement or certification by Senior Moderator Pixie.RN, on behalf of Allnurses (which holds itself out as fair and impartial), that what is stated in the post is factually correct. Id., ¶ 149. As a result of Pixie.RN's endorsement, readers of the thread who were prospective customers of ATP were scared away from doing business with ATP and current customers were susceptible of discontinuing doing business with ATP. Id., at ¶ 160.
ATP alleged that the posts by LadyFree28 and duskyjewel on September 12, 2014, on the "Achieve Test Prep ... anyone?" thread stating that ATP was under federal investigation were false, as ATP has not been investigated by the FTC or under federal investigation. SAC, ¶¶ 172-174, 179, 180; Olynyk Decl., ¶ 21; Olynyk Reply Decl., ¶¶ 4(b), (d), (f).
ATP alleged that all of the false statements about ATP by the John Does were made with negligence as to their falsity, with reckless disregard as to whether the statements were true or false, or with knowledge as to their falsity; the statements were made willfully or maliciously; the statements were made in bad faith; and as a result, ATP's business was harmed. SAC, ¶¶ 182-185.
ATP retained Dr. James Roberts to quantify the damages suffered by ATP as a result of the alleged defamatory postings by the five John Doe defendants. Olynyk Decl., ¶¶ 37-56; Declaration of Dr. James Roberts ("Roberts Decl.") [Docket No. 160], ¶ 1, Ex. A (expert report). Based on Dr. Robert's expert opinions, ATP estimated that it had already lost revenues in the range of $5,032,000 to $7,240,000 and lost profits ranging from $1.9 million to $2.7 million, and over the next two years, it will continue to lose customers (376 to 542 customers), revenue ($3,008,000 to $4,336,000) and profits ($1,140,000 to $1,620,000). Olynyk Decl., ¶¶ 43, 44, 52, 53, 55. In total, ATP estimated lost customers ranging from 1,005 to 1,447; lost revenues in the range of ($8,040,000 to $11,576,000); and lost profits in the range of $3,040,000 to $4,320,000. Id., ¶ 56.
C. Procedural History
ATP previously had moved for expedited discovery to obtain responses to its interrogatories and document requests for the purpose of acquiring information that would identify the John Doe defendants JustBeachyNurse, monkeyhq, LadyFree28, duskyjewel and Pixie.RN. [Docket No. 56]. Allnurses resisted the motion on the grounds that the information sought by ATP was protected by the First Amendment and that Allnurses had jus tertii standing to assert the constitutional rights of its website users. Order dated December 18, 2015 [Docket No. 85], pp. 8-9, 16. This Court rejected the standing argument, concluding that the John Does could assert their own First Amendment rights by moving to quash any subpoenas that ATP served on their respective ISPs or OSPs. Id., p. 28-29. Consequently, this Court granted ATP's motion in part and required Allnurses to respond to ATP's Document Request Nos. 1-4, which sought any documents containing the John Does' names, addresses, and IP address logs. Id., p. 31. Allnurses objected to the Order and the District Court (Chief Judge John Tunheim) sustained Allnurses' objections and denied ATP's motion to compel. East Coast Test Prep LLC v. Allnurses.com, Inc., 167 F.Supp.3d 1018 (D. Minn. 2016) (" Vacation Order").[6]
First, the District Court found that Allnurses did have standing to assert the First Amendment rights of the John Does. Id. at 1022-23. Second, the Court concluded *654 that the information sought by ATP-the IP addresses of the John Does-constituted personally identifying information and implicated the First Amendment interests of the John Does. Id. at 1023.
Third, the Court found that while the John Doe defendants' First Amendment rights to speech were clearly impacted by ATP's motion to compel, it did not mean that discovery of their IP addresses was not appropriate under certain circumstances. Id."The Court must balance the John Doe defendants' right to speak, and to speak anonymously, with the state's interest in regulating defamation and other forms of speech." Id. Noting that while neither the Supreme Court nor the Eighth Circuit had yet to provide direction on whether an anonymous speaker's right to speak should be protected in the context of discovery, other courts had provided guidance. Id. (citing In re Anonymous Online Speakers, 661 F.3d 1168, 1174-76 (9th Cir. 2011) ; Arista Records, LLC v. Doe 3, 604 F.3d 110, 118-19 (2d Cir. 2010) ; Enterline v. Pocono Med. Ctr., 751 F.Supp.2d 782, 787-88 (M.D. Pa. 2008) ; Doe v. Cahill, 884 A.2d 451, 457-58 (Del. 2005) ; Dendrite Int'l, Inc. v. John Doe No. 3, 342 N.J.Super. 134, 775 A.2d 756, 760-61 (N.J. App. Div. 2001) ; see also Nathaniel Gleicher, John Doe Subpoenas: Toward a Consistent Legal Standard, 118 Y.L.J. 320, 362-64 (2008) (proposing a test) ).
The District Court concluded that the "basic consensus" as to how "a court should protect rights to anonymous speech in the context of a request for production" was as follows:
First, the party seeking discovery of the information that might unmask the anonymous speaker must make reasonable efforts to notify the speaker by, for example, attempting notice via the same medium used by the speaker to send or post the at-issue message. Doe I v. Individuals, 561 F.Supp.2d 249, 254 (D. Conn. 2008) ; Dendrite, 775 A.2d at 760 (2001) ; see also Gleicher, 118 Y.L.J. 363. This requirement gives the speaker the opportunity to seek to quash the discovery request on their own. Doe I v. Individuals, 561 F.Supp. at 254. Second, the plaintiff must produce prima facie support for all of the elements of his or her case that are within his or her control. Arista Records, 604 F.3d at 119 ; Doe I v. Individuals, 561 F.Supp.2d at 255-56 ; Highfields Capital Mgmt. L.P. v. Doe, 385 F.Supp.2d 969, 976 (N.D. Cal. 2005). "Requiring at least that much ensures that the plaintiff is not merely seeking to harass or embarrass the speaker or stifle legitimate criticism." Krinsky v. Doe 6, 159 Cal.App.4th 1154, 72 Cal.Rptr.3d 231, 245 (Ct. App. 2008). Third, the Court must consider whether the plaintiff has identified specific statements made by the anonymous speakers and consider "whether there is an alternative means of obtaining the information." Doe I v. Individuals, 561 F.Supp.2d at 255 ; see also Dendrite, 775 A.2d at 760. Fourth and finally, if the above factors do not make it abundantly clear, the Court must determine whether the "party seeking discovery has 'demonstrated an interest in obtaining the disclosures it seeks ... which is sufficient to justify the deterrent effect ... on the free exercise ... of [the] constitutionally protected right.' " Perry v. Schwarzenegger, 591 F.3d 1147, 1164 (9th Cir. 2010) (alterations in original) (quoting NAACP v. Alabama, 357 U.S. 449, 463, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ); see also Dendrite, 775 A.2d at 760-61 ; Gleicher, 118 Y.L.J. at 363.
Id. at 1024-1025. The Court gave ATP leave to file a renewed motion for discovery "in light of the applicable law described in this order." Id. at 1020.
Following the issuance of the Vacation Order, this Court worked with counsel for the parties to develop a procedure for ATP
*655 to renew its motion to compel Allnurses to answer discovery bearing on the identities of the John Does, after notification of the motion to the John Does. Ultimately, after input and argument of the parties, the Court issued two Orders addressing the content and modality of the notice to the John Does, along with the timing of the briefing and hearing on ATP's renewed motion to compel. Order dated August 22, 2016 [Docket No. 153]; Amended Order dated August 31, 2016 [Docket No. 156].
In order to notify the John Does of the upcoming motion to compel, the Court required a "Banner" and "Legal Notice Page," (Exhibits A and B attached to the Order), to be placed on the Allnurses' website setting forth information regarding ATP's renewed motion and attaching copies of relevant pleadings. Order dated August 22, 2016, p. 6. The Legal Notice described the nature of ATP's suit and the substance of its motion to compel, notified the John Does of the time and date of the hearing on the motion, and informed the John Does how to object to plaintiffs' motion ("Any John Doe Defendant objecting to ATP's Motion to Compel Discovery must file with the Clerk of Court for the District Court of Minnesota a written response to the motion and serve a copy on all counsel of record by [date]."). Amended Order dated August 31, 2016, Ex. B. The Legal Notice then informed the John Does how to protect their identities in responding to ATP's' motion:
If you are not represented by a lawyer, you must include with your written response, your name, address and phone number. However, if you do not want to reveal your identity (name, address and phone number) to the parties, you may do this by (a) filing with the Clerk of Court and serving on counsel of record for the parties a written response that redacts (hides or removes) your name, address and phone number, and (b) by sending an unredacted version of the same written response to Magistrate Judge Mayeron at the address below.
* * *
Magistrate Judge Mayeron will not disclose your name, address and phone number to Plaintiffs, Allnurses or counsel of record for these parties. The Court will only use this information to communicate to you about the motion, including the outcome of the motion.
Id.
In compliance with these Orders, following service and filing of the instant motion to compel, Allnurses placed the Banner and Legal Notice Page on its website.
After ATP filed its renewed motion to compel and the Banner and Legal Notice Page were placed on the Allnurses' website, duskyjewel filed written objections to the motion. [Docket Nos. 180]. LadyFree28 also responded to the motion by filing a Motion to Dismiss [Docket Nos. 181, 188]; Motion for Protective Order, which was essentially an objection to ATP's renewed Motion to Compel [Docket Nos. 182, 189]; Counterclaim [Docket Nos. 184]; and a Letter directed to this Court [Docket Nos. 183, 187]. Both duskyjewel and LadyFree28 filed redacted objections with the Clerk of Court (i.e. hiding the name, address and phone number of the John Doe), and sent unredacted objections to the Court, revealing this identifying information to the Court only.[7]
*656 Shortly before the hearing on ATP's renewed Motion to Compel, ATP discovered through further investigation the identities of duskyjewel, LadyFree28, and Pixie.RN. As a consequence, on November 23, 2016, Allnurses sought permission to file a Motion for Reconsideration of this Court's August 22, 2016 Order. Letter to Court dated November 23, 2016 [Docket No. 237]. Allnurses claimed that the Court had "disregarded" its request that the John Does direct all correspondence to the Court and as a result, ATP had learned information from "court personnel and the John Does" sufficient to identify duskyjewel and LadyFree28. Id., pp. 1-2. Allnurses also claimed that the Court's process for notifying the John Does of the motion created an untenable choice. Id., p. 2 ("If this process is allowed to stand and Plaintiffs are permitted to take unjustified advantage of the Court's process, John Doe defendants in the District of Minnesota (and elsewhere throughout the nation) will effectively have to choose between (1) not responding to a motion seeking their identity, and thereby not fully addressing the merits, not filling out the record for the court, or, in the case of a party where there is no third party opposing disclosure, complete abandonment of any attempt to prevent disclosure and comply with the First Amendment; or (2) responding and knowing that such a response will allow the plaintiff to discover their identity without any showing that the claimed harm outweighs the substantial First Amendment interests in protecting anonymous speech. This is not a choice that any anonymous Doe should ever have to face.").
Following receipt of ATP's response to the request [Docket No. 242], the Court denied Allnurses request to file a motion for reconsideration, finding that there were "neither compelling or extraordinary circumstances, manifest errors of law nor newly discovered evidence that warrant granting this request." Letter by Court dated November 29, 2016 denying request for reconsideration ("Court Letter Denying Reconsideration Request"), p. 1 [Docket No. 244]. The Court explained that it had previously considered Allnurses' request for ex parte communications by the John Does to the Court and had created a mechanism that allowed the John Does to remain anonymous, and at the same time, gave ATP the opportunity to respond to any objections filed by a John Doe. Id., p. 4. The Court also rejected as meritless any suggestion that "Court personnel" divulged the John Does' identities and noted that ATP did not solely use the filings by duskyjewel and LadyFree28 to discovery their identities.[8] Id., p. 5.[9]
*657 The Court found no merit to Allnurses' claim that the Court's Orders created an untenable Hobson's choice. Id., p. 5. The Court explained that the process described in its Orders did not set out a "take it or leave it" choice. Id. The John Does were given the option of filing fulsome objections to ATP's motion to compel and gave neither advice nor placed any constraints on the substance of their objections. Id. Further, the decision gave the John Does the opportunity to lodge those objections anonymously, if they so chose. Id. LadyFree28 and duskyjewel filed substantive objections that did not reveal their identities. Id. The fact that LadyFree28 and duskyjewel may have shared information in their substantive responses that assisted ATP's efforts to discover their identities was not the result of the process set out in the Order. Id."In short, the Court created a procedure that would allow the anonymous John Does to oppose plaintiffs' motion without having their identities revealed; it did not create a process in which it could guarantee that a John Doe's identity would not ultimately be discovered based on the substance of their objections or through other means." Id.
D. ATP's Renewed Motion To Compel Discovery of Identities of John Does [10]
ATP has now renewed its motion to compel Allnurses to respond to those portions of Interrogatory Nos. 1, 3-5, 11, 13 and 19 and Document Requests Nos. 1-5 and 9-12 that seek information and documents bearing on the identities of the John Does.[11] ATP's Memorandum in Support of Motion ("ATP Compel Mem."), p. 2 [Docket No. 168]. ATP also sought an order allowing it to conduct further discovery pertaining to the identities of the John Does based on information obtained from ATP's current and future discovery requests without requiring further orders of the Court. Id., pp. 2-3.
At the hearing on the motion to compel, ATP took the position that its motion was moot as to Pixie.RN, duskyjewel and LadyFree28 as it already knew their identities. As for JustBeachyNurse and monkeyhq, ATP submitted that it had met each of the four factors identified by the District Court in its Vacation Order to obtain information bearing on their identity. Id., pp. 11-28. ATP maintained that the first *658 prong-making reasonable efforts to notify the speaker-was satisfied by the Court's Orders of August 22 and August 31, 2016, which resulted in the placement of the Banner and Legal Notice Page on Allnurses' website. Id., p. 15.
As to the second prong-the production of prima facie support for all of the elements of the case that are within the plaintiff's control-ATP contended that, whether the Court applied New Jersey or Minnesota law, it had made out a prima facie case of defamation for the statements made by JustBeachyNurse and monkeyhq on August 22, 2014 on the allnurses.com website.[12] ATP Compel Mem., pp. 15-25 (citations omitted); see also SAC, ¶¶ 117-127, 159; Olynyk Decl., ¶ 21.
ATP contended that these statements by JustBeachyNurse and monkeyhq on August 22, 2014, constituted mixed opinions and were therefore, actionable under either New Jersey or Minnesota law. Reply Memorandum in Support of Plaintiffs' Motion to Compel Discovery of Identities of John Doe Defendants ("ATP Compel Reply"), pp. 8-20 (citations omitted) [Docket No. 213]. In a "mixed opinion" statement, the speaker generally implies that he or she is aware of undisclosed facts supporting his or her opinion and these facts are false and defamatory. Id., pp. 9-11 (citations omitted). In this case, the comments by monkeyhq and JustBeachyNurse that ATP's services "will be redundant" and that ATP "will be obsolete" unquestionably implied the existence of undisclosed defamatory facts. Id., pp. 15-16. Specifically, JustBeachyNurse's comment that "ATP and similar services will be redundant as of July 1, 2014," suggested that the poster believed that ATP's services would be "unnecessary" or "duplicative" based on some undisclosed knowledge relating to the challenge exams, effective July 1, 2014. Id., pp. 16-17. According to ATP, the statement implied a verifiable factual assertion, the truth of which ATP has denied and has demonstrated that it was harmed by the comment. Id., p. 17.
Similarly, ATP monkeyhq's statement that "Test Prep companies for Excelsior Exams will be obsolete by July 1, 2015," was an actionable "mixed opinion" statement because it began with the phrase "As Beachy said," implying that it was based on facts unknown to the reader. Id., p. 15. Further, the ordinary meaning of the term "obsolete" is that something is "no longer in use or no longer useful," leading a reader to conclude this was the case based on monkeyhq's further statement "so unless you plan to finish EVERYTHING by that time, it is a total waste of your investment ." Id., pp. 15-16 (emphasis in original) (quoting Merriam-Webster Collegiate Dictionary, 10th ed. (1993) ).
ATP further asserted that both Minnesota and New Jersey apply a negligence standard and that it had made out a prima facie case of negligence based on the evidence that was in its control. ATP Compel Mem., p. 17 (citing Jadwin v. Minneapolis Star & Tribune Co., 367 N.W.2d 476, 491 (Minn. 1985) ; G.D v. Kenny, 411 N.J.Super. 176, 984 A.2d 921, 927-28 (N.J. Ct. App. 2009) ). ATP acknowledged that in some circumstances, a more stringent "actual malice" standard may apply pursuant to New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny. Id. Here, however, actual malice did not apply because Allnurses is not a media defendant and ATP is not a public figure, nor is this case a *659 matter of public concern or of public interest. ATP Compel Reply, pp. 3-6. Thus, negligence is the correct standard. Nevertheless, "the Court need not make a determination as to that (and consequently, what standard applies) at this juncture" because, based on the standard adopted by the District Court, it was only required to submit prima facie proof of elements under its control, and knowledge of whether the posters had the requisite degree of fault involved proof of items beyond its control. ATP Compel Mem., pp. 17-18, 20 (citations omitted); ATP Compel Reply, pp. 3, 7-8 (citations omitted).
ATP posited that under the law of New Jersey and Minnesota, statements are defamatory when they are false and harm the reputation of another. ATP Compel Mem., p. 18 (citations omitted). Further, under the law of both states, when statements are defamatory per se, there is no requirement to submit proof of actual damages. Id., p. 19 (citing Becker v. Alloy Hardfacing & Eng'g Co., 401 N.W.2d 655, 661 (Minn. 1987) ). These statements include those that falsely accuse a person of committing a crime or improper or incompetent conduct involving a person's business. Id. (citations omitted). ATP submitted that "all of the statements are defamatory on their face." Id., p. 20. But even if they were not, ATP suffered actual damages through the loss of potential customers (and associated lost revenues and profits), injury to reputation and loss of good will. Id. (citing Roberts Decl., Ex. A (expert report) ). According to ATP, Dr. Roberts studied the impact of the allegedly defamatory statements and found that a very significant percent of the LPNs surveyed would not use ATP's services after hearing they were obsolete, ATP was under federal investigation, and that Excelsior College had warned students against using third party test services. ATP Compel Mem., p. 7 (citing Roberts' Decl., Ex. A). Dr. Roberts also opined that "it is likely that substantial injury has occurred to the reputation and good will of ATP as a result of a substantial number of ATP's prospective customers being exposed to the 'Achieve Test Prep ... anyone?' thread." Id., p. 8 (citing Roberts Decl., Ex. A, pp. 25-26, ¶¶ 1, 2). Mark Olynyk, the owner of ATP, estimated that ATP had lost between $5,032,000 and $7,240,000 in revenue, and lost profits ranging from in excess of $1,900,000 to more than $2,700,000 as a result of the defamatory statements. Id. (citing Olynyk Decl., ¶¶ 41-44; Roberts Decl., Ex. A, p. 33, ¶¶ N, P). According to ATP, "[e]ven these damages will pale in comparison to the long-term injury to Plaintiffs so long as the 'Achieve Test Prep.... anyone?' thread remains accessible to the public and subscribers of Allnurses." Id., p. 10.
As to the third prong articulated by the District Court-the identification of specific statements and consideration of alternative means of obtaining the information-ATP submitted that the Second Amended Complaint identified the specific defamatory statements by the John Does at issue, and Olynyk attested that these statements were false and defamatory.[13] Id., pp. 20-25 (citing SAC, ¶¶ 117-123, 163-172, 175-180), Olynyk Decl., ¶ 23. Further, as set forth in Olynyk's declaration, ATP has no alternative means for identifying the Does. Id.
Regarding the fourth prong-whether ATP has demonstrated an interest in obtaining the disclosures from Allnurses sufficient to justify the deterrent effect on the John Does' First Amendment rights-ATP
*660 urged that it met this burden as it had no alternative means to identify the John Does and that without the discovery necessary to unmask them, it could not add them as parties and "hold them responsible" for their statements. ATP Compel Mem., p. 26. ATP also contended that it had shown a sufficient interest in seeking the identities of the John Does because the First Amendment does not shield individuals from the consequences of defamatory speech, even anonymous speech. ATP Compel Reply, pp. 21-25. ATP cited to numerous extra-jurisdictional cases in which courts have weighed an anonymous speaker's First Amendment rights against the right of an aggrieved party to seek redress for defamatory speech, and have concluded that former must give way to the latter. Id. (citations omitted).
In opposition to ATP's motion, Allnurses did not claim that ATP failed to exercise reasonable efforts to notify the speaker. Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery of Identities of John Does ("Allnurses' Opp. Compel Mem."), p. 4 [Docket No. 202]. However, as for the second prong of the District Court's Order, Allnurses argued ATP had failed to establish prima facie support for its defamation claims. Id., pp. 4-23. Allnurses contended that under New Jersey and Minnesota law, a defamatory statement is one that is factual and false. Id., p. 7 (citation omitted). Further, opinions are by definition non-defamatory-only provably false statements are actionable. Id., pp. 8-9 (citations omitted).[14] Allnurses submitted that the alleged defamatory statements by JustBeachyNurse and monkeyhq were not statements of fact; at most, they were statements of opinion. Id., p. 9 (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) ; Price v. Viking Penguin, Inc., 881 F.2d 1426, 1432 (8th Cir. 1989) ; Janklow v. Newsweek, Inc., 788 F.2d 1300 (8th Cir. 1986) ; Kotlikoff v. Community News, 89 N.J. 62, 71, 444 A.2d 1086 (1982) ).
Applying these precepts to the statements at issue by JustBeachyNurse and monkeyhq, Allnurses first argued that ATP had taken their statements out of context and had only quoted a portion of each post. Id., pp. 16. 18. For example, JustBeachyNurses' full post was:
If you need in person classes and support it would be more economical (plus the potential for financial aid & scholarships) to attend a local brick & mortar school rather than the challenge exams of ATP and doubling your costs with a tutoring service. (Neither covered by federal financial aid).
ATP and similar services will be redundant as of July 1, 2014 when all challenge exam candidates will be mandated to take the Excelsior online exam prep classes prior to becoming eligible to sit the challenge exams. The prep classes are not free (though prep class plus challenge exam should cost less than the online courses)[.]
Id., p. 18.
Similarly, user monkeyhq's post-in-full read:
As Beachy said, Test Prep companies for Excelsior Exams will be obsolete by July 1, 2015; so unless you plan to finish EVERYTHING by that time, it is a total waste of your investment.
*661 Keep in mind as well that TCN-a major player in test prep-is under investigation by the Federal Trade Commission. There is a reason for that. Quite often, test prep companies charge you far more than taking the course through the issuing college or at a local brick and mortar, and give you far less.
My personal belief is that you need to study what the SCHOOL requires you to study (and Excelsior is VERY helpful in this!), not some so-called equivalency program. There isn't a real short-cut to becoming a nurse ... you need to know the entire contents of a course, not the Cliff Notes. It will make you a better nurse (in most cases).
Best of luck!
Id., pp. 16-17.
Allnurses then argued JustBeachyNurse's statement was not defamatory because it was a statement of opinion, it did not lower the opinion of anyone in the community as to ATP, and it was not false. Id., p. 18. Allnurses maintained that to say something was "redundant" meant only that in a person's opinion it is duplicative or unnecessary; it is not a statement of fact capable of verification. Id.
In the same vein, monkeyhq's statement was not defamatory because it was a statement of opinion, it was not a statement about ATP, it did not lower the opinion of anyone as to ATP, and it was not false. Id., p. 17. According to Allnurses, there is "no method to verify the obsolescence of a company's services nor does the statement provide the requisite specificity as to what obsolescence means or how it is being asserted." Id. Moreover, ATP's own agent, GRN77 posted immediately after monkeyhq on the Allnurses' website, stating that "Test prep will no longer be available for Nursing classes." Id. (citing http://allnurses.com/excelsior-college-online/achieve-test-prep-815067-page3.html ). ATP's statement that it would no longer offer these classes, "was telling as to its own estimation of the value of its courses after the changes to the Excelsior program." Id., p. 17.
Allnurses also disagreed with ATP's assertions that as a private individual, it was not required to show actual malice, or even if negligence was the proper standard, ATP did not have to present evidence of negligence because the elements are not within its control. Id., pp. 12-13. Allnurses maintained that "negligence is a reasonable person standard and is readily demonstrable without knowing the actual poster's subjective intent, state of mind, or identity. Accordingly, it is an element within the control of Plaintiffs and they must make the requisite showing." Id., p. 13.
As to damages, Allnurses contended none of the statements were defamatory per se and ATP had provided no actual evidence of damages. Id., p. 14. There was no evidence presented that ATP had lost one customer, just as there was no evidence of any potential customer communicating to ATP that the customer had formed a negative opinion of ATP based on the allegedly defamatory comments. Id. Allnurses dismissed Dr. Roberts' statements about lost revenues and profits as "speculative," and pointed to contrary evidence that ATP's marketing agency had posted in which the agency touted its success in marketing ATP's services by increasing the monthly visitor traffic on ATP's website and conversions to customers during the relevant timeframe. Id., p. 15 (citing Declaration of John Reddall, Ex. B (blog post by Precision Marketing Group, LLC dated February 18, 2016) [Docket No. 203] ).
Lastly, even if ATP could make out claims of defamation, Allnurses contended that based on the fourth factor identified by the District Court, ATP had failed to demonstrate an interest sufficient to justify *662 the deterrent effect on anonymous speech. Id., pp. 24-29. According to Allnurses, the Internet provides a uniquely important forum for the free exchange of ideas, and there was a general acknowledgement by Congress, through the enactment of the Communications Decency Act ( 47 U.S.C. § 230 ), that this is so. Id., p. 25 (citation omitted). Therefore, the Court must consider the significant societal benefits of anonymous Internet speech when assessing ATP's claims. Id., p. 27-29.
E. Decision
1. Impact of ATP's Discovery of Identities of Pixie.RN, duskyjewel and LadyFree28 on Motion
The Court concludes that ATP's instant motion is moot with respect to Pixie.RN, duskyjewel and LadyFree28 because ATP has already discovered their identities, and consequently, there is no need for this Court to determine if their First Amendment rights are implicated by the discovery directed to Allnurses. To the extent that Allnurses suggested in its opposition to ATP's motion to amend the Second Amended Complaint that the procedures employed by the Court to notify and permit responses by the John Does to the motion to compel "resulted in the unforeseen violation of the First Amendment [and] required protections of the Does," this "suggestion" is rejected. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint, p. 2 [Docket No. 235]. First, the Court has already determined that the process employed to notify the John Does of the motion to compel was sufficient to protect their anonymity. Court Letter Denying Reconsideration Request. Second, the First Amendment issues raised by ATP's motion to compel bear only on anonymous speakers and not on those whose identities are known to the moving party. Therefore, the Court overrules Allnurses' argument that Pixie.RN, LadyFree28 and duskyjewel continued to enjoy First Amendment protection even though they were no longer anonymous.[15]
Accordingly, for the balance of this Order, the Court considers the issues raised by ATP's motion to compel as they bear on the two remaining anonymous posters-JustBeachyNurse and monkeyhq.
2. The "Achieve Test Prep ... anyone?" Thread
As stated previously, the thread entitled "Achieve Test Prep ... anyone?" was created on February 12, 2013, by poster Heavenly4505. The thread consists of a discussion by many different Allnurses'
*663 members over a long period of time about the advantages and disadvantages of using ATP's test preparation services in conjunction with Excelsior's RN program, along with other alternative services and options. ATP did not set out the full text of thread in the Second Amended Complaint. However, as discussed in the next section, the law of defamation requires the Court to consider the context of and circumstances surrounding any alleged defamatory statements. Therefore, to understand the context of the alleged defamatory statements by JustBeachyNurse and monkeyhq at issue in this case, it is necessary to read the entire thread found at http://allnurses.com/excelsior-college-online/achieve-test-prep-815067.html. Below, the Court sets forth the pertinent portions of the thread, including the allegedly defamatory statements by JustBeachyNurse and monkeyhq.
The initial post on February 12, 2013 by Heavenly4505 reads:
Hello, I'm wondering if anyone out there has tried Achieve Test Prep to help them get their RN through Excelsior? I've been a LPN for 2 years and work full-time in long-term care, plus have two young children. I really want to get my RN, but going to a traditional "brick and mortar" program is not going to be possible for me. I enrolled in Excelsior back in 2011, right after I got my LPN license. However, I lost motivation, got bored with it, and felt lost in the huge amount of reading I had to do with no guidance. So I dropped out of the program. Now, I'm thinking about doing it again. I am also considering Indiana State's online LPN-BSN program, but I still need two pre-reqs plus the TEAS, challenge exams, etc. And I know they've had some problems with their program lately (just in California from what I understand but who knows how it will affect their entire program in the future).
Long story short, I'm considering trying Achieve Test Prep to help me finish Excelsior's program. I do NOT want to even try College Network or any of those other places. I'd love to hear input from anyone who's tried Achieve's program. Do you feel prepared? How much is the total cost, monthly payment amounts, etc.? How long will it take you to finish? I've had most of the general education courses, but with Excelsior's new rule about A & P and Microbiology being completed in the last 5 years, I will most likely need to retake those along with all the nursing courses, FCCA, and CPNE. Thanks to anyone who can help!
There were several posts that same day, which generally discussed the pros and cons of third party test prep companies (including ATP) and Excelsior College, including the posts by JustBeachyNurse and Pixie.RN,
In this regard, JustBeachyNurse responded to Heavenly4505 stating:
Achieve Test Prep is a test prep company, just like The College Network BUT they offer classroom review sessions. Their costs are on top of the registration, enrollment, exam (and practice exam) fees and any other charges levied by Excelsior. In my limited experience, it's akin to taking a review class for the NCLEX (you still have to pay for your nursing education, NCLEX fees and BoN fees) for some it works for others it does not. If you need an in person tutor in a group environment and can afford the extra costs on top of the Excelsior costs, then it may be beneficial to you.
Excelsior College is NOT for everyone. You must be internally motivated to be successful in the program. Have you looked to see if any of your local community colleges offer an onsite-online LPN to RN bridge program? These programs *664 are gaining in popularity (online classes and in person clinicals once a week or so) to cater to the working professional who wishes to advance their education.
Good luck with whatever you choose.
Edited to add: It is NOT cheap, but you cannot get an exact cost and time plan without meeting with an enrollment counselor from Achieve Test Prep either online or in person. I understand that it isn't a hard sell and if it is out of your price range they often recommend that you not pursue their program. Unlike TCN who pushes enrolles to sign up right away with a credit card or for one of their affiliated high interest private loans.
Heavenly4505 wrote back to JustBeachyNurse:
Thank you JustBeachyNurse. I actually have an appointment "online" at 1PM today to talk with an admissions counselor from Achieve. I am not even going to consider College Network. They are way too pushy. I filled out an online information request form on Indiana State's website for their LPN-BSN program, and since then, College Network calls me daily-sometimes 2 or more times a day! I never requested any information at all from College Network-the form I filled out was on Indiana State's site (I made sure of that before I filled it out). I've told them I'm not interested and that need to stop calling, but they continue to call frequently.
I am not aware of any hybrid programs in my area. I live in Cincinnati, OH. If anyone knows of a program with online coursework and onsite clinicals once or twice a week, please let me know. It would have to work with my schedule, though. I work full-time nightshift in a nursing home, and cutting down to part-time or quitting my job is NOT an option at all. Thank you!
JustBeachyNurse responded to Heavenly4505:
Check with your state Board of Nursing or just look into some of your local community college nursing programs directly (sometimes the information does not show up on Google).
Prepare a list of questions before you appointment this afternoon: such as hidden costs, financing options (if any), scheduling of prep-classes vs. exam scheduling, recommended timeline, etc. Most states you must apply & enroll directly with Excelsior, and pay EC directly for the exams.
As far as TCN/ISU there is a relationship there. If you did not agree to the contact, look at the "Do Not Call" regulations as you do not have a business relationship with them. You can always file a complaint or check with your phone service provider about blocking what amounts to harassing calls. (hence why I don't give my phone number out on online forms, but I have call blocking capabilities on my home phone number. You could always do what I did when my child was younger, if they didn't get the message of "DO NOT CALL ME ANYMORE" they got an invitation to speak with my yippy dog who like to shriek at the phone or my then toddler. usually solved the problem quickly.)
Heavenly4505 responded to JustBeachyNurse:
LOL @ the yippy dog! I don't have one of those but I do have 3 meow-y cats who are very vocal when they want their dinner. Maybe I'll put one of them on next time LOL
The phone calls from the College Network appear to have died down thankfully. I know there's a connection between them and ISU, but I didn't expect to get a million calls after just filling out ISU's information request form. I have *665 checked in to some college programs in my area. The ones I've looked at don't work with my work schedule. One of my former LPN classmates is doing Galen. They have a "hybrid" program, but the clinicals run late into the evenings, and I have to be at work at 7 PM. If Achieve's program is too expensive, I will most likely just try Excelsior again on my own. My life is in a better place now than it was 2 years ago when I tried it the first time, so maybe I will be successful this time.
That post followed by another post by Heavenly4505:
JustBeachyNurse, are you doing Achieve's program, or have you done it? Or are you an Excelsior student/grad?
Then Pixie.RN responded to Heavenly4505's post:
EC warns students about third-party publishers and test prep companies-they are not affiliated with EC, nor does EC endorse their use (http://www.excelsior.edu/about-test ... ation-services). EC's program is set up to provide an outline/syllabus for each class in the form of a free exam content guide that you can download. There are plenty of people out there looking for study buddies, both in person and through other media like Skype, if you need some external motivator to keep you on track. I'd advise you to think twice before you add a lot of money to the bottom line of your education bill! Good luck, whatever you decide.
Heavenly4505 wrote back to Pixie.RN:
I know Achieve is not affiliated with EC. I was just trying to get some motivation to stay on track, and I thought having an instructor and classmates might do that for me. In the end, I decided against Achieve. It's going to cost me over $7000 total for the program, which she said would be a $222 payment per month. And that's on TOP of Excelsior's payment plan for the enrollment fee/tests. It would end up being around $500 per month total, and I don't have that kind of money. I graduated from LPN school with a 4.0 GPA, so it's not a question of whether I can do it or not. I know I can do it; I just need some direction and motivation.
The next post was July 11, 2013, which generally discussed Excelsior College, ATP and the limited seats available for in-person nursing education at a community college.
There were no posts until October 2-8, 2013. These posts generally discussed the earlier comment by Pixie.RN, that Excelsior College had "warned" students about third-party test prep companies and the pros and cons of working with the third-party companies.
Again there was another gap in the thread. The next posts were between February 8-24, 2014, which generally discussed the costs and benefits of Excelsior College, test prep companies and the posters' various strategies for passing their exams.
There were no posts for six months on the thread, until August 22, 2014, when three posts appeared. First, user hardworkinggrn2 stated:
There are a lot of great ways to get your LPN-RN and one thing to really consider is how you learn best. Mystudygroup101 can certainly be a great resource but they just provide you with more materials that you need to go through on your own. ATP's classes provide the structure and visual learning that so many people need to be successful. The classes are taught by RN's whose personal knowledge and experience can be a great support system during this journey. I find that the best investment is always whatever is going *666 to help you be most successful in reaching your goals.
On the same day, JustBeachyNurse responded to hardworkinggrn2's post stating:
If you need in person classes and support it would be more economical (plus the potential for financial aid & scholarships) to attend a local brick & mortar school rather than the challenge exams of ATP and doubling your costs with a tutoring service. (Neither covered by federal financial aid).
ATP and similar services will be redundant as of July 1, 2014[16] when all challenge exam candidates will be mandated to take the Excelsior online exam prep classes prior to becoming eligible to sit the challenge exams. The prep classes are not free (though prep class plus challenge exam should cost less than the online courses)
On the same day, monkeyhq followed with this response to JustBeachyNurse's post:
As Beachy said, Test Prep companies for Excelsior Exams will be obsolete by July 1, 2015; so unless you plan to finish EVERYTHING by that time, it is a total waste of your investment.
Keep in mind as well that TCN-a major player in test prep-is under investigation by the Federal Trade Commission. There is a reason for that. Quite often, test prep companies charge you far more than taking the course through the issuing college or at a local brick and mortar, and give you far less.
My personal belief is that you need to study what the SCHOOL requires you to study (and Excelsior is VERY helpful in this!), not some so-called equivalency program. There isn't a real short-cut to becoming a nurse ... you need to know the entire contents of a course, not the Cliff Notes. It will make you a better nurse (in most cases).
Best of luck!
The next posts took place on September 4, 2014, by GRN77, an employee of ATP (SAC, ¶¶ 85, 86), and JustBeachyNurse:
GRN77: Test prep will no longer be available for Nursing classes but will continue to still be available for all Gen eds. I would wait until Excelsior releases more details about this change before jumping to conclusions. It is also important to note that Achieve has live instructors leading their test prep classes-this is not true for other programs. Excelsior will conduct their classes as learning modules that need to be completed at your own pace. No live instruction.
JustBeachyNurse: But if you require live fees or classroom instruction perhaps a potential student should reconsider Excelsior as this is (or at least was) a program intended for independent learners. Many community colleges offer hybrid LPN to ASN bridge programs that are part facilitated online classes and one day a week classroom instruction. And often a more affordable option.
The comments continued from September 4-16, 2014, by a number of posters including all of the John Does at issue.
On September 9, 2014, daisymarie61 posted:
in regards to ACHIEVE TEST PREP.. i am currently enrolled in their program. i personally love it ! achieve test prep is NOT a school, it is basically a "gateway" to help you pass exams. the school where you would obtain your college *667 accredited credits is excelsior college. I'm not sure if this is the same online college used for every achieve test prep or if it depends on your location of the US. anyways, i graduated in july of 2013 had a baby, passed my nclex in november bc i procrastinated to schedule a date r/t being pregnant lol .. went off maternity leave in february 2014 started working in february and started ACHIEVE TEST PREP AND EXCELSIOR COLLEGE IN MARCH 2014 .. i have prior credits from other colleges so i basically only have to take the nursing courses. ANYWAYS i should be done with the LPN TO ASN by this MARCH 2015.
it works for me because they have site based [not too many options] and virtual. i really didn't want to do virtual initially bc i figured theres no ONE ON ONE help if needed. but i gave it a shot and the teachers online are actually in my opinion so far MORE involved with your needs. i love it! the teachers are always available through email if you have any direct questions, they have sample questions etc. and by doing virtual and site based i am able to double up on some classes to cut my graduation time! as a new young mom looking to succeed as soon as i can i have passed every single class very quickly on my first try ...
however, there are some students that I've talked to that do NOT have the same luck. all in all its basically how motivated you are and if you are able to learn independently. hope this helps !!!!:]
Daisymarie61 followed this post with another post, stating:
in regards to someone saying that they aren't going to do nursing classes anymore only gen ed.... this is not true. i am currently in classes and signed up for more coming up
Monkeyhq responded to daisymarie61's post on the same day, stating in relevant part:
Actually, they will no longer be doing nursing courses AT ALL for NEW STUDENTS.
Excelsior changed their requirements-effective July 2015, you must enroll in online 16 week subjects before you are allowed to sit for their nursing exams ... and this is for EACH course.
Achieve will not offer nursing courses to ANYONE NEW to their 'test prep' program. This was confirmed on Achieve Test Prep website only yesterday.
Chat with one of their live chat representatives and ask the direct question ... they will tell you first to talk to a counselor, then the counselor will tell you the truth.
Also, go to Excelsior's website and click on their ADN program. At the bottom of the page, you will see the notification. Test prep-or gateway programs (as you call it)-will be obsolete since you are REQUIRED to enroll in the Excelsior 16 week program. Why would anyone pay for it twice?
As for your own nursing courses, please ensure that you are registered for you Excelsior exams PRIOR to July 2015, as it is a FACT that they are changing their program and if you are not registered to sit for nursing core exams prior to this date, you will be required to sit for 16 weeks on the incomplete subjects.
* * *
On September 10, 2014, JustBeachyNurse also responded to daisymarie61:
This change is for new students that enroll in the test prep program not current students. As of July 2015 the requirements for the ASN program at Excelsior will drastically change. This is presently the only fully distance *668 LPN/medic to ASN program in the country, according to the ATP the only school their tutoring service prepares for. Kudos to you for comprehending that Archive is NOT a school but a test prep program. Not all attendees understand that fact and assume ATP is a school.
On September 10, 2014, poster UlanaD responded to monkeyhq's comment ("As Beachy said, Test Prep companies for Excelsior Exams will be obsolete by July 1, 2015"):
How can you say this as a fact? Do you work for EC? The notice I got says you have to do the conference the first 8 weeks and then anytime in the next 8 weeks you take the exam. That is the only information that has been put out that I can find. You still have to study for the exam and isn't that what the test prep companies do (supply study material for the exam)? Not that I recommend TCN, RUE or Achieve because I don't-but this still sounds like just an opinion and not a fact. Alot of people are already kicking themselves for signing up with some of these companies and it just seems cruel to stress them further by throwing opinions out there without facts to back it up. That's my 2 cents.
Monkeyhq responded the same day to UlanaD as follows:
This is not my opinion, it is fact. Excelsior provides all the necessary resources for study for their exams, and no test prep company is authorized by Excelsior to work in conjunction with their exams. Effective July 2015, the 16 week participation requirement will provide enhanced learning for the exams, and there will be an increased charge for each subject (that cost has not yet been published).
Achieve is not enrolling new students for the nursing components for Excelsior because they understand the changes make their services in this regard unnecessary.
Some companies are still actively selling a bill of goods for Excelsior nursing exams under the premise that the student can 'challenge exam' those nursing courses upon enrollment and on demand. Unless those students enroll in Excelsior and complete all 8 exams prior to July 2015, along with nearly all of their general education credits, those students are NOT going to be able to 'challenge exam' on demand. They will be forced to pay Excelsior for and participate in the 16 week conferences/study session, at an added as-yet-to-be-determined expense. Some are not informing their students of the change, even though they are aware of the change. As if the many lawsuits, the class-action, the FTC investigations, etc., weren't enough, there will be a whole new group of people sold snake oil. Companies like this have built in their own obsolescence.
Imagine the shock when the student finds out they can't get out of their contract, even though Excelsior changed their requirements? Imagine paying for something you DON'T need, and then not being able to afford what you DO need? Imagine you participate in an online/in-person/printed test prep class only to find that the materials you have studied do not fully correspond to the material you are required to know (and learn) during the 16 week Excelsior system?
Test-preps are not approved by Excelsior. Since the effective date of Excelsior's program change is July 2015, how can ANY test prep company sell you a bill of goods for a program that has not provided to them the specific material needed to prepare for the post-participation exam?
*669 The problems Excelsior has had to deal with because of test prep companies is well documented in various resources. Just over a few weeks ago, they added a NEW disclaimer to the front page of their ADN program page on their website.
As for additionally stressing students who have already signed up, I can't help their stress. I wish I could because I feel for them in the deepest possible way, and have four close friends who are dealing with those same stresses. Withholding pertinent information to save those already kicking themselves any additional stress-to the detriment of new persons seeking answers about test prep companies as related to core nursing courses-is preposterous. I CAN help other students who are considering enrolling in one of these test-preps by informing them of the significant changes to the Excelsior program, the lack of need for any test-prep service as related to the nursing components (per Excelsior's own statements), and the associated financial risks that they may encounter.
I am sure those that have already been affected appreciate the attempts of others to bring forth information that may prevent new students from getting themselves into a similar self-kicking situation.
On September 11-12, 2014, a number of persons posted on the thread, including users learning-is-good (who is Mark Olynyk, the plaintiff and owner of ATP (SAC, ¶ 21) ), and John Does duskyjewel and LadyFree28.
As it bears on the allegations in this suit, on September 11, 2014, learning-is-good (Mark Olynyk) wrote:
I agree with 'UlanaD's' point that 'monkeyhq' is just stating his/her opinion and not fact about whether or not test prep companies are needed or not. And by doing so is likely causing extra unneeded stress to individuals that read those posts that have contracted with the test prep centers for help. There is no reason to make them feel bad about their decision because this is nothing wrong with the decision they made.
Here is a fact-I can't see anything on Achieve Test Prep's website that states they are no longer offering Excelsior nursing exam test prep classes or that they will stop offering them. Another fact-some people do better in a structured live classroom environment rather than a learn-at-your-own-pace online learning modules like the one Excelsior is running. And Achieve Test Prep does state on its website that they offer live teacher led classes and I believe so do some other test prep centers. Some people need the help provided by the test prep companies and let's face it, being successful with the Excelsior exams is very important because if you fail an exam too many times Excelsior will kick you out of the nursing program permanently. So spending some money for extra help to make sure you pass sounds like a very worthwhile investment to me!
On the same day, duskyjewel responded:
monkeyhq, I think you're doing the Lord's work here, but some people are just never going to listen. I hope you save at least one person.
As it is, I guess I have to go to one of your posted links and find out what the changes are for Excelsior's LPN-ASN program, because I was considering it once I get my LPN and need to find out if I should cross it off the list. So thanks for posting!
On the same day, learning-is-good (Mark Olynyk) responded to monkeyhq's post:
I don't agree that monkeyhq is doing the Lord's work. That's silly. I don't think *670 the Lord cares to take a position on whether people utilize the test prep services of one company over another. My guess is the Lord supports freedom of choice. No one solution works for everyone.
monkeyhq makes all these sweeping statements implying all test prep centers are bad and unneeded. Simple common sense would tell you that cant be true. While I do agree the college network does have a bad reputation on the internet, its not fair to punish all test prep centers as a result. I often see blogs from students that state the other test prep companies have made all the difference in the world to their progress. And I have also seen posts from students that tried the Excelsior program directly on their own and failed. It's my opinion that if you need help, you go out and get help.
Later that day, learning-is-good (Mark Olynyk) also wrote:
Excelsior students have until June 30, 2015 to register to take the nursing exams under the current pricing. They just need to register for it, not take it. So long as they register by June 30, 2015 they will have 6 more months to take the exams. So that gives them to December 31, 2015 to complete the exams. That is plenty of time for just about anyone to complete the Excelsior nursing exams before this new program forces them to use Excelsior's test prep program. Again, some people do fine with a learn-it-on-your-own online modules while others prefer a live teacher led test prep module like Achieve's.
I get that you are pro-'do it yourself with Excelsior', but that doesn't work for everyone. Achieve Test Prep is still offering nursing test prep courses for the Excelsior nursing courses and will continue to offer nursing test prep courses regardless of the stance that you take. And yes, if someone wishes to know the true scoop on any company or school, they should just call the place themselves and not trust that all information posted in blogs is accurate. Its not unusual for people to have biased opinions about things and then make up facts to support their own cause.
You state that test prep centers over-charge. First, I am unsure how you are able to comment on all test prep centers. Really it seems you are just anti-test prep centers and I might guess there is no information in the world that would change your mind. But what you feel is overcharging, I am sure someone else would fee is fair price for a quality test prep course that helped them pass.
User monkeyhq also responded to learning-is-good's post that day by stating:
There are major caveats to your statements. And you will find all of this information on the EC website...
[listing 8 different points]
This sounds like you are accusing me of making up facts? I must be pretty darn good at completely manufacturing the chat conversation transcript that I copied and pasted here that I personally had with an Achieve employee.
Do you work for Achieve? In what capacity? And why isn't your staff on the same page?
User duskyjewel then wrote in response to monkeyhq:
Yeah, I'm starting to wonder what learning-is-good's investment is in defending these companies.
The next day, on September 12, 2014, there were several posts among learning-is-good (Mark Olynyk), duskyjewel, and LadyFree28. First, learning-is-good (Mark Olynyk) responded to duskyjewel's post from the previous day, stating:
*671 My interest in posting my input on this blog is simple-to correct information posted that is incorrect and to provide alternative points of views to obviously one-sided points of view. This helps give the readers a better chance of understanding what their true options are. Isn't that what blogs are largely about? I would hope that even those that don't agree with my actual positions on test prep vs no test prep can still appreciate the common sense behind what I have just said here.
I am not saying learning requires a live classroom environment. I am saying many people do better in the live classroom environment. And many people prefer the live classroom. And of course some don't. Mostly I am saying-let people choose what works best for them. Some people seem intent on forcing their opinions on others. My message will always be to just let people choose for themselves. Don't say things are black and white, and this is good and that is bad. Instead its better to say different things work for different people. There is no one right point of view in this world but rather many points of views. Anyone that truly has the best interest of the readers at heart, certainly can appreciate those points.
User duskyjewel then responded to learning-is-good's post on September 12, 2014:
Your point of view is just as one-sided. Just saying. The difference here is that monkeyhq has backed hers up over and over again with factual statements from the organizations being discussed, while you keep resorting to emotional appeal. Do you think people should be left to "choose for themselves" disastrously by someone who has information that can help them? Some of these test prep companies are under federal investigation for fraudulent practices! Wouldn't it be immoral for a person who knows that not to point that out to someone thinking of paying them a ton of money?
Are you sure that some of your passion doesn't come from having sunk thousands of dollars into one of these companies yourself, and having a hard time being told that you might be getting defrauded?
Learning-is-good (Mark Olynyk) responded on the same day to duskyjewel's post:
Duskyjewel, You going to scare people by saying some test prep centers are under federal investigation, but my guess is it's just one. And there are colleges losing their accreditation for nursing programs all the time and if you check with Excelsior's accrediting body you will see they had their nursing program on probation not that long ago. And you will see that some nursing boards in 15 states either restrict or totally reject the Excelsior ASN degree and won't allow graduates to sit for the NCLEX. Does that mean the program is no good? Of course not. Some states are ok with Excelsior's program and others are not. There is that difference of opinion thing again. And does what one college do mean the next college is also guilty of the same? Of course not.
Bottom line is test prep centers work well and help a lot of people. Maybe some people feel threatened by that because they didn't get the benefit of the test prep centers when they attended a regular 4 year degree program and spend a ton of money on it, and therefor don't want others to benefit from the help the test prep centers provide? Other than some bad stories relating to always the same test prep center, I have never heard anyone with a story of being defrauded by the other test prep centers. Don't group all test prep centers *672 into the same category because of one bad apple. It just not fair.
LadyFree28 then responded on the same day to the posts by learning-is-good and duskyjewel:
But the discussion is about THIS particular test-prep program that IS being investigated by the federal government and is under a current lawsuit; there are too many forums that have stated the Achieve "deceived" them with their practices; that is the MAIN focus of this discussion, NOT "other test prep companies."
User duskyjewel also responded to learning-is-good's comment to duskyjewel ("You going to scare people by saying some test prep centers are under federal investigation, but my guess is it's just one") by stating:
Sounds like you should be scared. TCN + Achieve equals more than one.
The posts stopped on September 16, 2014.[17]
3. The Law Bearing on the Motion
Pursuant to Vacation Order, ATP was required to "produce prima facie support for all of the elements of his or her case that are within his or her control." 167 F.Supp.3d at 1024-25 (citing Arista Records, 604 F.3d at 119 ; Doe I v. Individuals, 561 F.Supp.2d at 255-56 ; Highfields Capital Mgmt. L.P., 385 F.Supp.2d at 976 ). Thus, to provide prima facie support that the statements by JustBeachyNurse and monkeyhq were defamatory, ATP was required to make a " 'concrete showing of a prima facie claim of actionable harm.' " Arista Records, LLC, 604 F.3d at 123 (concluding "plaintiffs' Complaint, attached exhibit, and supporting declaration are clearly sufficient to meet that standard."); see also Doe I v. Individuals, 561 F.Supp.2d at 255-56 (acknowledging that courts have differed on what constitutes prima facie support for claims against an anonymous speaker, with some courts requiring only a good faith basis for the claims and other courts requiring that a plaintiff show that the claims could withstand a summary judgment motion, and adopting the requirement that the plaintiff make a "concrete showing" as to each element of its claim) (citations omitted). " 'Prima facie evidence is that which will support a ruling in favor of its proponent if no controverting evidence is presented. It may be slight evidence which creates a reasonable inference of fact sought to be established but need not eliminate all contrary inferences.' " Krinsky, 72 Cal.Rptr.3d at 245 n.14 (quotations and citations omitted).
The parties contended, and this Court agrees, that the law governing defamation is substantially the same in New Jersey and Minnesota and as a result, the Court need not preliminarily conduct a choice of law analysis.
Under New Jersey law, a prima facie case of defamation requires the plaintiff to establish a false statement, communicated to a third person, that tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him. W.J.A. v. D.A., 210 N.J. 229, 238, 43 A.3d 1148, 1153 (2012) (citing Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-65, 735 A.2d 1129 (1999) ) (citing Restatement (Second) of Torts §§ 558, 559 (4th ed. 1977) ); see also Sync Labs, LLC v. Fusion Mfg., Civ. No. 11-3671, 2016 WL 6802479, at *13 (D.N.J. Nov. 16, 2016) (describing the elements of defamation under New Jersey law as "(1) a false statement about the plaintiff, (2) communication of the statement to a third *673 party, (3) fault of the defendant amounting at least to negligence, and (4) damages suffered by the plaintiff.") (citing DeAngelis v. Hill, 180 N.J. 1, 847 A.2d 1261, 1267-68 (2004) ); Dendrite Int'l, 775 A.2d at 771-72 ("A defamatory statement is one that is false and 1) injuries another person's reputation; 2) subjects the person to hatred, contempt or ridicule; or 3) causes others to lose good will or confidence in that person.") (citation omitted). Whether a statement is defamatory depends on "its content, verifiability, and context." Lynch, 161 N.J. at 167, 735 A.2d at 1137 (citation omitted).
To be defamatory, a statement must be capable of being proven true or false. Mangan v. Corporate Synergies Grp., Inc., 834 F.Supp.2d 199, 205 (D.N.J. 2011) (citing Lynch, 161 N.J. at 167, 735 A.2d 1129 ). "Statements of pure opinion do not satisfy this requirement because such statements only 'reflect a state of mind,' and therefore generally 'cannot be proved true or false.' " Id. (citation omitted). However, "statements of opinion do not receive 'a wholesale defamation exemption.' " Id. (citation omitted). A "mixed opinion" is one that is " 'apparently based on facts about the plaintiff or his conduct that have neither been stated by the defendant nor assumed to exist by the parties to the communication.' " Id. (citation omitted). As a result, opinion statements can trigger liability for defamation "if the statements 'imply false underlying objective facts.' " Id. (citations omitted).
In summary, under the law of New Jersey, whether a statement is defamatory "depends on its content, verifiability, and context;" "statements of opinion, like unverifiable statements of fact, generally cannot be proved true or false;" "opinion statements reflect a state of mind;" a "pure opinion" is one that is based on stated facts or facts that are known to the parties or assumed by them to exist; a "mixed opinion" is one not based on facts that are stated or assumed by the parties to exist; "if a statement could be construed as either fact or opinion, a defendant should not be held liable;" and "the context of a statement can affect significantly its fair and natural meaning." Lynch, 161 N.J. at 167-68, 735 A.2d at 1136-37 (citations and internal quotation marks omitted).
Under Minnesota law, a plaintiff must prove three elements to establish a defamation claim: " '(1) the defamatory statement is communicated to someone other than the plaintiff, (2) the statement is false, and (3) the statement tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community.' " Elkharwily v. Mayo Holding Co., 823 F.3d 462, 468 (8th Cir. 2016), cert. denied, --- U.S. ----, 137 S.Ct. 481, 196 L.Ed.2d 386 (2016) (quoting Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919-20 (Minn. 2009) (internal quotation marks omitted) ); see also McKee v. Laurion, 825 N.W.2d 725, 729 (Minn. 2013) (same).
A defamatory statement "must present or imply a false fact." Riverside Church v. City of St. Michael, 205 F.Supp.3d 1014, 1043 (D. Minn. 2016) (citing Schlieman v. Gannett Minn. Broad., Inc., 637 N.W.2d 297, 308 (Minn. Ct. App. 2001) ). " 'Whether a statement is defamatory depends on how ordinary people would interpret its language in light of the circumstances.' " Id. (citing Holler v. Hennepin Cty., 2015 WL 7693563, at *6 (Minn. Ct. App. Nov. 30, 2015) ); McKee, 825 N.W.2d at 731 ("Whether a defamatory meaning is conveyed depends upon how an ordinary person understands 'the language used in the light of surrounding circumstances.' ") (citation omitted). Minnesota applies a negligence standard for the "mental state in civil cases of defamation involving private individuals in the civil context." State v. Turner, 864 N.W.2d 204, 208 (Minn. 2015) (citation omitted).
*674 "Expressions of opinion ... are generally not actionable if, in context, the audience would understand the statement is not a representation of fact." Jadwin v. Minneapolis Star & Tribune Co., 390 N.W.2d 437, 441 (Minn. Ct. App. 1986) (citations omitted); see also Pfeil v. St. Matthews Evangelical Lutheran Church, 877 N.W.2d 528, 546 (Minn. 2016) (citation omitted) (holding that expressions of opinion are not actionable). Like New Jersey, Minnesota courts embrace the standard created by the United States Supreme Court in Milkovich, 497 U.S. at 18-20, 110 S.Ct. 2695, in which the Court established that statements couched as opinions may be unprotected if they imply a defamatory factual basis. See Hunter v. Hartman, 545 N.W.2d 699, 706 (Minn. Ct. App. 1996) (rev. denied June 19, 1996) (citing Milkovich and emphasizing the necessity of examining the context in which the statement was made to determine if it is pure opinion).
As the court in Krinsky explained:
In determining whether the statement is one of pure or mixed opinion, the court must examine the statement in its totality and the context in which it was uttered or published. The court must consider all of the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement and consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.
72 Cal.Rptr.3d at 248 (internal quotation marks and citations omitted).
4. Analysis
Applying the factors articulated in the Vacation Order to determine whether ATP is entitled to discover information bearing on the identities of JustBeachyNurse and monkeyhq, as an initial matter, the Court finds that ATP adequately notified the John Does of its efforts to discover their identities and adequately described the statements at issue. See Orders dated August 22 and 31, 2016 ("Based on the Vacation Order and the authority cited in the Order ... (citing Doe I v. Individuals, 561 F.Supp.2d at 254 ; Dendrite, 775 A.2d at 760 ; Gleicher, 118 Y.L.J. at 363 ), the Court finds that plaintiffs' obligation to make reasonable efforts to give notice to the John Does of the motion to compel is satisfied by posting the notice on Allnurses' website as provided in this Order.").
Nevertheless, as to the second factor set forth in the Vacation Order, the Court finds that ATP did not make out a prima facie case of defamation against either JustBeachyNurse or monkeyhq because their statements regarding redundancy and obsolescence are pure opinion. As such, these John Does are shielded from a claim of defamation. See Mangan, 834 F.Supp.2d at 205 ("[T]o qualify as a defamatory statement, the statement must be able to be proven true or false.") (citation omitted); Riverside Church, 205 F.Supp.3d at 1043 (a defamatory statement "must present or imply a false fact.") (emphasis added) (citation omitted).
In response to the post by hardworkinggrn2 on August 22, 2014, JustBeachyNurse stated that "ATP and similar test prep services will be redundant as of July 1, 2014." This statement is opinion because it is not verifiable, and the basis of the opinion is stated in the post ("when all challenge exam candidates will be mandated to take the Excelsior online exam prep classes prior to becoming eligible to sit the challenge exams.") and is at best debatable, as evidenced by the numerous subsequent *675 posts by GRN77 (an employee of ATP), JustBeachyNurse, learning-is-good (Mark Olynyk), Daisymarie61, monkeyhq, and UlanaD from September 4-12, 2014. This statement is quintessential opinion because it simply reflects JustBeachyNurse's state of mind and her view as to whether ATP's services will provide any use or value. Whether something is redundant depends on a whole host of factors and could be different for each person. For example, in reading the entire thread, there were many comments about the various ways to gain entrance into nursing programs, pass nursing exams, and how to pass Excelsior College exams specifically. Posters opined as to the relative value of third party test preparation companies. What might be "redundant" for one test-taker might not be redundant for another as, for example, with bar examination preparation courses. While one law student, who might be gravely concerned about the examination, may opt to take one or more preparation courses, another student may consider courses redundant and may take no course at all, preferring to rely on his or her law school education as preparation.
Significantly, the statement that JustBeachyNurse offered to support her opinion of redundancy-"as of July 1, 2014 when all challenge exam candidates will be mandated to take the Excelsior online exam prep classes prior to becoming eligible to sit the challenge exams"-even if verifiable and false (thus, converting the redundancy comment to a mixed opinion), was not a statement about ATP and there is nothing about the statement that cast ATP in a negative light.
Likewise, monkeyhq's statement that "Test Prep companies for Excelsior Exams will be "obsolete" by July 1, 2015," is pure opinion, as it is not something that can be verified as true or false. Whether something will be obsolete at a future date is in the eye of the beholder and dependent on many factors. For instance, many people rely on technology that others characterize as "obsolete," such as landline telephone service. "Obsolete" is used interchangeably with "dated" or "old fashioned." https://www.merriam-webster.com/thesaurus/obsolete. As with the concept of "redundancy," what is "obsolete" is dependent on one's point of view and state of mind. In fact, learning-is-good, who is Mark Olynyk and the owner of ATP, expressly acknowledged in his post on September 11, 2014, that monkeyhq's comments were opinion ("I agree with 'UlanaD's' point that 'monkeyhq' is just stating his/her opinion and not fact about whether or not test prep companies are needed or not."). He then went on to clarify what ATP does and does not offer. Further, the "factual support" for monkeyhq's opinion about obsolescence was "As Beachy said," and what "JustBeachyNurse said" is not actionable for the reasons stated above. In addition, like the redundancy comment by JustBeachyNurse, monkeyhq's statement is not a statement about ATP and there is nothing in it that casts ATP in a negative light.
Additionally, when examining whether statements are defamatory, one must take into the account the context of these statements, and statements cannot be examined in isolation. See Lynch, 735 A.2d at 1137 ; Hunter, 545 N.W.2d at 706. When the redundancy and obsolescence statements are read in the context of the post that immediately followed in the thread on September 4, 2014, ATP's employee, GRN, agreed that ATP was not going to offer test preps for nursing classes, although it would offer them for Gen Eds. Further, GRN did not contradict JustBeachyNurse's statement about what challenge exam candidates would or would not be required to do. Instead, he suggested that the reader wait until Excelsior released more details about the changes they were making and explained the services offered *676 by ATP that are not offered by other programs (i.e., ATP has live instructors leading their test prep classes, while Excelsior does not).
Moreover, when these statements are examined in the context of the entire thread, it is clear from the colloquy among all the posters, that they were engaged in a robust give-and-take discourse regarding the pros and cons of a variety of options for schooling to become a nurse, the advisability and value of taking test prep courses to obtain degrees, and what Excelsior College in particular would and would not require to obtain a degree from it. Some of the posters were quite positive about third-party test preparation courses, including ATP, others were not. There is nothing about the postings by JustBeachyNurse and monkeyhq in the context of the thread as a whole (or even up to and including their posts) that suggests that they were making false statements about ATP, which were designed to cast it in a negative light or to harm ATP's reputation and to lower ATP in the estimation of the community of Allnurses' readers.
Finally, even if the Court had concluded that ATP had made out a prima facie case of defamation as to JustBeachyNurse's and monkeyhq's statements, the Court finds that in balancing ATP's interests against their interests in remaining anonymous against ATP's interests, the scales tip in favor of denying discovery of the their identities. See Highfields Capital Mgmt. L.P., 385 F.Supp.2d at 976 ("[T]he second component of the test requires the court to assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant. If, after such an assessment, the court concludes that enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs, the court would deny the motion to quash."). JustBeachyNurse and monkeyhq, like the other posters, including Mark Olynyk, engaged in precisely the kind of speech that online communities and discussion threads exist to support-the sharing of opinions and personal experiences for the benefit of others in the online community. To permit discovery of their identities would unacceptably chill this type of speech and cause others in the online community to withhold their opinions for fear of litigation. ATP's interest in using the discovery process to unmask JustBeachyNurse and monkeyhq for the opinions ATP disputes, does not outweigh the interests of JustBeachyNurse and monkeyhq to remain anonymous, particularly where ATP has failed to make a concrete showing that these opinions have cast it in a negative light or have lowered its reputation in the estimation of Allnurses' readers.[18]
For all of these reasons, the Court denies ATP's motion as to JustBeachyNurse and monkeyhq.
II. ATP'S MOTION TO SUPPLEMENT THE RECORD [Docket No. 251]
While ATP's Motion to Compel Discovery of the Identities of the John Does was pending, Allnurses answered ATP's discovery pursuant to this Court's *677 Discovery Order late in the evening on December 12, 2016. Based on Allnurses' responses, ATP filed the instant Motion to Supplement the Record of Plaintiff's Motion to Compel Identities of John Doe Defendants. [Docket No. 251]. In its supplemental answers, Allnurses admitted that JustBeachyNurse was a Moderator for Allnurses and an "Allnurses' Personnel" as defined by the Court in its Discovery Order.[19] Memorandum in Support of Plaintiffs' Motion to Supplement Record of Their Motion to Compel Discovery of Identities of John Doe Defendants ("ATP's Supp. Mem."), p. 2 [Docket No. 253]; Declaration of Richard Ravin filed on December 21, 2016, Ex. A-2 (Defendants' Second Amended First Set of Answers to Plaintiffs' First Set of Interrogatories) at p. 3 (Answer to Interrogatory No. 6) [Docket No. 254-1]. ATP further learned through Allnurses' responses that Allnurses had terminated JustBeachyNurse as a moderator in August, 2013, six months after she had begun posting on the thread. Id. ATP submitted that Allnurses had previously submitted false declarations stating that JustBeachyNurse had "no relationship with or connection to" Allnurses and was an "anonymous third part[y] who [had] no relationship with either myself or Allnurses.com, Inc." and "[did] not work for Defendants." ATP's Supp. Mem., p. 3 (citing Declaration of Richard Ravin, Exhibit B, ¶ 9 [Docket 18-2]; Declaration of Richard Ravin, Exhibit C, ¶ 4 [Docket No. 30-4] ). ATP sought to supplement the record with the information that JustBeachyNurse was an "Allnurses Personnel" when she posted her comments about ATP and that Allnurses has known her identity. Id., p. 4.
ATP contended that this information was relevant to its pending motion to compel because it was inconsistent with Allnurses' previous position that JustBeachyNurse was an anonymous poster entitled to First Amendment protection. Id., pp. 6-7. In addition, this information bore on the fourth prong of the test articulated by Judge Tunheim, which called for a balancing between the interests of the party seeking disclosure with the First Amendment interests of the anonymous poster. Id., p. 7. According to ATP, because JustBeachyNurse provided identifying information to Allnurses, this fact lessened her First Amendment interests. Id. In support of its motion, ATP advanced two new cases it claimed bolstered its argument that Allnurses could not rely on the Communications Decency Act ("CDA") as a defense to the lawsuit. Id., pp. 9-11 (citing BWP Media USA, Inc. v. Crowdgather, Inc., 2014 WL 12601054 (C.D. Cal. July 28, 2014) ) (citing SI03, Inc. v. Bodybuilding.com, 441 Fed.Appx. 431 (9th Cir. 2011) ).[20] ATP
*678 maintained that these cases (a) stood for the propositions that the CDA does not apply if Allnurses developed the offending content (through its "Allnurses Personnel," JustBeachyNurse), and (b) render JustBeachyNurse's speech commercial speech, not private speech, which was entitled to diminished First Amendment protection. Id., pp. 10-11 (citation omitted).
Allnurses opposed the motion, arguing that the information about JustBeachyNurse that it disclosed in discovery was irrelevant to APT's motion to compel because whether the posters were known to it was not only irrelevant, it was assumed. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Supplement Record of Plaintiffs' Motion to Compel Identities of John Doe Defendants ("Allnurses' Supp. Opp. Mem."), p. 1 [Docket No. 257]. Allnurses submitted that the point was whether the speaker was anonymous to the public at large. Id. According to Allnurses, the only new information disclosed in discovery was that JustBeachyNurse had been a moderator for Allnurses a year before making the posts at issue; this fact did not make JustBeachyNurse an agent or employee of Allnurses; and did nothing to change his or her anonymous status. Id., p. 2. Allnurses also rejected ATP's use of a term defined by the Court for the purposes of discovery-"Allnurses' Personnel"-to denote a legal relationship between JustBeachyNurse and Allnurses, where none existed. Id., p. 3. Allnurses further argued that the standard described by the District Court did not include an analysis of whether the anonymous speaker's identity was known to the website operator. Id., p. 4. If that was the case, no anonymous poster would be entitled to First Amendment protection, an outcome which is clearly contrary to First Amendment jurisprudence. Id., p. 5. In support, Allnurses cited Thomas M. Cooley Law School v. Doe 1, 300 Mich.App. 245, 833 N.W.2d 331 (2013). There, the court found that a John Doe's disclosure of personally-identifying information to a state bar association, which was made in confidence, did not waive his anonymity as to the public. Id., pp. 5-6 (citing Thomas M. Cooley Law School, 833 N.W.2d at 337 ).
In sum, Allnurses argued that the newly disclosed information about JustBeachyNurse was irrelevant and Allnurses' immunity under the CDA was not before the Court, as ATP admitted. Id., pp. 7-8.
A motion to supplement the record may be granted when the information sought to be introduced is relevant and previously unavailable. See, e.g. Ortiz-Alvarado v. Gomez, Civ. No. 14-209 (MJD/SER), 2014 WL 3952434, at *3 (D. Minn. Aug. 13, 2014) (granting motion to supplement finding that information was relevant to issues of a motion for class certification and not previously available); Ali v. Electrolux Home Products, Inc., Civ. No. 12-2826 (MJD/LIB), 2014 WL 2945794, at *5 (D. Minn. June 30, 2014) (denying motion to supplement the record when new evidence was not relevant to any issues in the case).
The Court denies ATP's motion for the simple reason that it is not relevant to its motion to compel. First, as Allnurses pointed out, it has always been understood that Allnurses possessed some identifying information regarding the John Doe posters, including JustBeachyNurse. The critical factor is that as to the public, JustBeachyNurse is an anonymous poster-a choice she made when she adopted a pseudonym to use publically, without any identifying information. Second, whether JustBeachyNurse was a moderator a year before posting her alleged defamatory comments has no bearing on any issue pending before this Court with respect to the motion to compel. As ATP conceded, issues relating to the CDA are not relevant to the motion to compel, rendering *679 JustBeachyNurse's status vis-à-vis Allnurses immaterial to the Court's decision on ATP's motion. Finally, the proffered new information does not change the Court's conclusion that ATP has failed to provide prima facie support for its claim that JustBeachyNurse's statement about redundancy is defamatory.
For all of these reasons, the Court denies the motion.
III. LADYFREE28'S MOTION FOR PROTECTIVE ORDER [Docket No. 189]
LadyFree28 filed a pleading captioned "Motion for a Protective Order." [Docket No. 189]. LadyFree28 sought to through this pleading to remain anonymous and for an order denying ATP's Motion to Compel Discovery. Id. LadyFree28 stated that her motion was based "upon the attached Memorandum of Law" although no memorandum accompanied her motion. Id. LadyFree28 further stated that her motion was based on 18 U.S.C. §§ 1514 and 1001. ATP opposed the motion for the same reasons it believed the Court should grant its motion to compel. Plaintiffs' Memorandum in Opposition to Ladyfree28's Document Entitled Motion for Protective Order, pp. 1-3 [Docket No. 204]. Additionally, to the extent the Court treated the motion as an independent filing (i.e. not a response to ATP's motion to compel), ATP urged the Court to deny the motion, submitting that LadyFree28 had not compiled with Local Rules governing non-dispositive motions, and in any event, 18 U.S.C. §§ 1514 and 1001 cited by LadyFree28 in support of her motion, were irrelevant. Id., pp. 3-4. According to ATP, § 1514 governs applications made by Government attorneys to prohibit the harassment of victims or witnesses in pending federal cases, and § 1001 governs criminal charges for false statements. Id., p. 4.
The Court denies LadyFree28's motion. As previously explained, ATP has discovered LadyFree28's identify through its independent investigative efforts and the motion to compel as to LadyFree28 is now moot.
IV. ATP'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT [Docket No. 230]
A. Background
ATP moved for leave to file a Third Amended Complaint. Memorandum in Support of Plaintiffs' Motion for Leave to File Third Amended Complaint ("ATP Amend. Mem.") [Docket No. 232]. ATP proposed adding as defendants the following individuals and allegations relating to their actions: Lisa Dukes, whose pseudonym was Pixie.RN; Jennifer Moeller, whose pseudonym was duskyjewel; and Uhura Russ, whose pseudonym was LadyFree28. Id., p. 2; redlined proposed Third Amended Complaint ("PTAC") [Docket No. 233-13]. In addition, ATP sought to add a new claim of defamation against Allnurses for the posting of an "open letter" on its website,[21] in which Allnurses stated that the instant litigation was "meritless" and that ATP was seeking all personally identifying information of the John Doe posters, all of which ATP claimed was false, misleading and defamatory. PTAC, ¶¶ 351-372, Ex. H. ATP also sought to add new factual allegations reflecting the "insider" status of the John Doe posters with Allnurses and that they were under Allnurses' control (PTAC, ¶¶ 247-250); Allnurses' knowledge that duskyjewel's post about ATP being under federal investigation was false and its failure to remove it *680 from its website (PTAC, ¶¶ 256-264); ATP and Olynyk detrimentally relied on Allnurses' representations that ATP could correct the false and misleading information that had been posted on its website, only to have its representatives' accounts disabled so that they could not correct comments that continued to be made on the thread (PTAC, ¶¶ 341-350). ATP further proposed amending Count 7 (promissory estoppel) and Count 8 (common law misrepresentation) to add the factual allegations regarding Allnurses' shutdown of ATP's representatives' accounts after they attempted to correct misstatements in the "Achieve Test Prep ... anyone?" thread (PTAC, ¶¶ 455-464, 488-493), and other less substantive amendments that corrected grammar and syntax in the Second Amended Complaint. ATP contended that its motion, which was timely pursuant to the governing scheduling order, should be granted under the liberal standard of Rule 15(a) of the Federal Rules of Civil Procedure, where there has been no undue delay, bad faith, or dilatory motive in seeking leave to file it. ATP Amend. Mem., p. 6. As to the three John Does whose identities ATP just discovered, and the "open letter" which was only recently posted, ATP contended that there was no undue delay in adding these allegations and the amendments were not futile. Id., pp. 5-15.
Regarding futility, ATP argued that its allegations regarding the defamatory nature of the "open letter" would survive a motion to dismiss because a person of average intelligence would construe Allnurses' statement that the litigation was meritless to mean that ATP was abusing the court system, was doing so to improperly obtain "any and all personally identifying information," and that ATP's claims had no basis in law. Id., pp. 10-11. Further, Allnurses' statement about merit was not an opinion because it is verifiable-there has been no determination by the court that the suit lacks merit. Id., p. 12. Additionally, the "open letter" falsely stated that ATP was suing Allnurses for defamation, which while true, was nonetheless inaccurate in light of the many other meritorious counts ATP has asserted against Allnurses. Id., pp. 11-14. Lastly, ATP was not attempting to obtain "any and all" personally identifying information, which may have led the John Does to believe that ATP was seeking Social Security numbers, driver's license numbers, credit card numbers and the like. Id., p. 14.
Allnurses responded that it would be "improper" for the Court to consider the motion for leave to amend while its Motion for Judgment on the Pleadings was pending.[22] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint, p. 1 ("Defs.' Mem. in Opp.") [Docket No. 235]. Allnurses also maintained that the Court should defer the resolution of ATP's motion to amend until it had ruled on Allnurses' request for reconsideration of Memorandum Opinion and Order regarding notice to the John Does [Docket No. 153] and ATP's motion to compel discovery of the identities of the John Does.[23] Id., p. 2.
As to those proposed edits that were designed to merely correct or improve *681 upon sentence structure and grammar, Allnurses argued they added nothing to substantively alter the claims being made against Allnurses. Id., p. 3. According to Allnurses, ATP has had "ample opportunity to correct their prose prior to filing any of the three prior complaints and there is no justification for allowing an amendment to the Second Amended Complaint merely to correct these issues." Id.
Allnurses further argued that the motion should be denied because the proposed amendments were futile. Id., pp. 3-7. As to the "open letter," Allnurses contended that ATP's claim that it was not seeking "any and all personally identifying information" was belied by ATP's discovery which had sought all identifying information regarding the John Does in Allnurses' possession. Id., pp. 5-6 (citing Declaration of Richard Ravin, Ex. C-1 [Docket No. 161] ) (Second Request for Production of Documents, Document Request No. 3) ("Any and all documents that contain identification information of any and all of the Posters.") (emphasis in original); Plaintiffs' First Set of Interrogatories, Interrogatory No. 1 ("State whether you have any documents that identifies said person or contains identification information pertaining to said person, and if so, ... attach all said information and documents.") (emphasis in original).
Second, Allnurses submitted that its statement in the "open letter" that ATP's lawsuit was "meritless" was not an actionable, defamatory statement under New Jersey or Minnesota law. Id., pp. 6-7 (citations omitted).
ATP replied that the known John Does had no ongoing First Amendment right to anonymity; contrary to Allnurses' position, ATP did not request all forms of personally identification through discovery, yet Allnurses' statement in its "open letter" would lead a reader to believe that ATP was seeking credit card, bank information, Social Security numbers and driver's license numbers, which was untrue; and the proposed amendment as to defamatory nature of the open letter was not futile because taken together, the statements that the litigation was meritless and that ATP was seeking any personally identifying information in its possession regarding the users name, "paint[ed] a false and misleading picture of ATP" as abusing the judicial system and "running roughshod" over the John Does. Reply Memorandum in Support of Plaintiffs' Motion for Leave to File Third Amended Complaint, pp. 2-8 [Docket No. 236].
B. Decision
Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should freely give leave to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). However, "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Horras v. Am. Capital Strategies, Ltd., 729 F.3d 798, 804 (8th Cir. 2013) (internal quotation marks omitted) (quoting Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) ). "Where, as here, futility is raised as a basis for opposing proposed amendments to a complaint, the Court must determine whether the proposed claims state a claim for relief at this stage of the case." Issaenko v. Univ. of Minnesota, 57 F.Supp.3d 985, 1001 (D. Minn. 2014) (citing Briscoe v. Cnty. of St. Louis, Mo., 690 F.3d 1004, 1015 (8th Cir. 2012) ; Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) ). " '[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the *682 amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure....' " Hintz v. JPMorgan Chase Bank, N.A., 686 F.3d 505, 511 (8th Cir. 2012) (citation omitted); Zutz, 601 F.3d at 850-51 ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the Twombly pleading standard....") (citation and marks omitted). The law requires a complaint to allege sufficient facts to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ).
The Court grants ATP's Motion for Leave to Amend for the following reasons. For starters, Allnurses' arguments opposing the motion based on the pendency of its Motion for Judgment on the Pleadings and its request to file a motion for reconsideration are moot in light of Judge Tunheim's denial of the Motion for Judgment on the Pleadings and this Court's denial of the request to file a motion for reconsideration. Second, ATP brought its motion within the time allowed under the operative scheduling order, and there is no evidence of undue delay, bad faith, or prejudice to Allnurses. Third, the Court has determined that the proposed amendments are not futile. ATP has pled that the statements in the "open letter" were false, published to third parties and injurious to ATP's reputation. See PTAC, ¶¶ 351-372, 400. The additional facts reflected in these paragraphs were more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The new facts were based on the undisputed text of Allnurses' letter and the Court cannot conclude as a matter of law that the statements are not actionable, (e.g., because they are statements of pure opinion).
Fourth, Allnurses' arguments that the known John Does are entitled to ongoing First Amendment protection is meritless. The Court considered and rejected this argument in connection with Allnurses' request seeking leave to file a motion for reconsideration and again in connection with ATP's motion to compel. ATP has discovered the identities of duskyjewel, Pixie.RN and LadyFree28 and may now amend the complaint to add these individuals as defendants.
ATP is directed to file and serve the Third Amended Complaint as found at Docket No. 233-1. Defendants shall respond in the time permitted under the Federal Rules of Civil Procedure.
EXHIBIT A
INTERROGATORIES
Interrogatory No. 1
As to each John Doe Poster (i) Identify said person, (ii) state whether you or any Allnurses Personnel know or knew the identity of said person, and if so, state whether you or Allnurses Personnel know or knew the first name, last name, physical addresses, postal addresses, e-mail addresses, phone numbers and places of employment of said person, and IP Addresses used by said person, (iii) state whether you have any documents that identifies said person or contains identification information pertaining to said person, and if so, identify the source of said information, identify *683 the documents containing said information, and attach all said information and documents to your Answers to Interrogatories.
Interrogatory No. 3
Has Allnurses, or any Allnurses Personnel, ever notified or attempted to notify or communicate with any John Doe Poster as to (i) the existence of this lawsuit or the threat of a lawsuit by one or both Plaintiffs, (ii) any proceedings or discovery requests pertaining to this lawsuit, (iii) or that the identity or information leading to the identity of Posters were being sought? If your answer is in the affirmative, (a) set forth the John Doe Posters who were notified, attempted to be notified or communicated with, (b) Identify the Allnurses Personnel who notified or attempted to notify or communicated with said John Doe Posters, (c) set forth the date and means of notification or attempted notification or communication, and (d) Describe in Detail the notifications, attempted notifications and/or communications with the John Doe Posters. Attach to your Answers to Interrogatories any and all documents containing said notifications and communications.
Interrogatory No. 4
Identify any and all direct communications that Allnurses Personnel have had with each of the (i) John Doe Posters, (ii) ATP Posters, and (iii) Allnurses Posters, and Describe in Detail any and all such communications; except that the requested communications with Allnurses Posters shall be limited to communications about, or referring to, this litigation (including without limitation, the state court proceedings) or the threat of litigation by one or both Plaintiffs. Attach to your Answers to Interrogatories any and all documents containing said communications.
Interrogatory No. 5
Identify and Describe in Detail any and all communications that Allnurses Personnel have had with every other Allnurses Personnel relating to (i) the identity of the John Doe Posters, and (ii) this lawsuit (including without limitation, the state court proceedings) or the threat of a lawsuit by one or both Plaintiffs. Attach to your Answers to Interrogatories any and all documents containing said communications.
Interrogatory No. 11
Did Allnurses or Brian Short ever allow Allnurses Personnel to have or use more than one Username, and did any Allnurses Personnel ever have or use more than one Username? Set forth all Usernames used by or registered to each Allnurses Personnel from January 1, 2013 to present, including without limitation all Usernames for Brian Short, Pixie.RN, NRSKarenRN, traumaRUs, and sirI, and Describe in Detail what you did to determine that you that have provided all the requested Usernames.
Interrogatory No. 13
Has Allnurses ever removed a thread and/or post in a thread in response to a complaint that the posts were false, misleading, defamatory, disparaging or derogatory? If so, identify the thread(s) and/or post(s) removed, including any URLs of any such posts, and Identify the business, person or entity that requested the removal, and Describe in Detail the circumstances surrounding the request and the removal.
*684 Interrogatory No. 19
As to each Poster (i) Identify each Allnurses.com, Inc. Personnel, past and present, who have or had knowledge of the identity of said Poster, (ii) the dates that each said Personnel obtained said knowledge, (iv) Describe in Detail how each Personnel obtained said knowledge, and (v) Describe in Detail the current location, custody and control, as well as the form and format, of any written or electronically stored information or documentary information upon which said knowledge was obtained.
DOCUMENT REQUESTS
Document Request No. 1
Any and all documents containing the true name of each Poster.
Document Request No. 2
Any and all documents containing the postal or physical address of each Poster.
Document Request No. 3
Any and all documents that contain identification information of any and all of the Posters, including information as to true name, location (including without limitation, residence, work or employer, contact information (including without limitation, address, phone, fax, e-mail).
Document Request No. 4
Any and all IP Address Logs for each and every Poster pertaining to each and every session that said Poster accessed, created, deleted, edited, modified, copied, pasted, uploaded, downloaded, sent, received, transmitted or communicated on or pertaining to Allnurses.com,
a. as to any post, comment, "Like" or other statement made on or to,
i. Achieve Test Prep.... anyone? Thread from commencement of the thread to date, and
ii. Achieve Test Prep questions Thread from commencement of the thread to date; and
b. registration on Allnurses.com, including without limitation the accessing, creating, deleting, editing, modifying, copying, pasting, uploading, downloading, sending receiving, transmitting or communication information pertaining to the Allnurses.com Registration Account.
Document Request No. 5
Any and all Registration Accounts documents for each and every Poster, including without limitation, any all information provided by any Poster in connection the registering as a member on Allnurses.com, including without limitation, e-mail addresses and passwords. Any documents in this Request containing passwords may be produced to Plaintiff's counsel with redaction of the passwords; conditioned, however, on the following: (i) that the unredacted versions of the production must be produced and held by your counsel, (ii) that your counsel acknowledges receipt of said unredacted documents. Plaintiffs reserve the right to seek production of said unredacted documents, including without limitation, by making a separate document request, by application or motion to the court, or by consent of your counsel.
Document Request No. 9
Any and all private electronic messages sent to each and every Poster, received from each and every Poster, or transmitted between each every Poster and you, including without limitation, any and all moderators, administrators, managers, employees, servants, volunteers, *685 contractors or agents, during the time period of February 1, 2013, to date.
Document Request No. 10
Other than any documents that you may have already provided in your response to Request No. 4 contained in Plaintiffs' Second Set of Documents Requests Directed To Defendants Allnurses.com, Inc., and The Estate of Brian Short (dated and served December 18, 2015), the IP Address Logs for the most recent five internest sessions for each and every Poster pertaining to each and every session that said Poster accessed, created, deleted, edited, modified, copied, pasted, uploaded, downloaded, sent, received, transmitted, or communicated on or pertaining to Allnurses Website. Said requested IP Address Logs shall also include the URL accessed, created, deleted, edited, modified, copied, pasted, uploaded, downloaded, sent, received, transmitted or communicated.
Document Request No. 11
Other than any documents that you may have already provided in your response to Request No. 4 contained in Plaintiffs' Second Set of Documents Requests Directed To Defendants Allnurses.com, Inc., and The Estate of Brian Short (dated and served December 18, 2015), or Request No. 10 above, any and all IP Address Logs for each and every Poster pertaining to each and every session that said Poster accessed, created, deleted, edited, modified, copied, pasted, uploaded, downloaded, sent, received, transmitted, or communicated on or pertaining to Allnurses Website. Said requested IP Address Logs shall also include the URL accessed, created, deleted, edited, modified, copied, pasted, uploaded, downloaded, sent, received, transmitted or communicated.
Document Request No. 12
Any and all documents which are referenced or requested in any Interrogatory served on you, or any document referenced or identified in your Answers thereto, whether said Interrogatories or Answers have already been served, such as Plaintiffs' First Set of Interrogatories served on April 29, 2016, or whether served in the future.

LadyFree28's Motion for Protective Order was decided on written submissions.

IP addresses and ISPs are described in Sony Music Entm't Inc. v. Does 1-40 as follows:
Plaintiffs were able to identify Cablevision as the Internet service provider ("ISP") to which defendants subscribed, using a publicly available database to trace the Internet Protocol ("IP") address for each defendant. ISPs own or are assigned certain blocks or ranges of IP addresses. An ISP assigns a particular IP address in its block or range to a subscriber when that subscriber goes 'online.' An ISP can identify the computer from which the alleged infringement occurred and the name and address of the subscriber controlling the computer when it is provided with a user's IP address and the date and time of the allegedly infringing activity.
326 F.Supp.2d 556, 558-59 (S.D.N.Y. 2004) (citations omitted).

Short died in September, 2015, and the personal representative of his estate, David Smits, was substituted in the instant lawsuit. See Docket No. 80.

The phrase "challenge exams" appear to be the exams that students take to test out of required courses at Excelsior, a process that is less expensive than taking the classes at the college. See SAC, ¶¶ 71-82.

Olynyk attached to his initial declaration as Exhibit A all of the excerpts from the Second Amended Complaint which set forth the false and defamatory statements at issue that had been posted by JustBeachyNurse, monkeyhq, LadyFree28, duskyjewel, and Pixie.RN. Olynyk Decl., ¶ 23 (citing SAC, ¶¶ 117-123, 163-172, 175-180). Olynyk also verified that the allegations were true and correct, including the falsity of the statements posted by the John Doe defendants on the Allnurses website. Id.; Olynyk Reply Decl., ¶ 4.

This Memorandum Opinion and Order is Docket No. 129, vacating Docket No. 85.

By mistake, LadyFree28 filed unredacted versions of these documents on the Court's CM/ECF system and sent redacted versions to this Court's chambers. After learning from Allnurses' counsel that unredacted versions were available to the public, the Court immediately directed the Clerk of Court's office to seal the pleadings to determine whether LadyFree28 intended to reveal her name. LadyFree28 confirmed that she did not want to reveal her identify and her pleadings were then filed on CM/ECF in redacted form. To insure that neither counsel nor their clients used the information regarding LadyFree28's identity gleaned from the papers that she had inadvertently sent to the Clerk of Court for filing, this Court ordered counsel and the parties not to divulge this information to anyone, and prohibited counsel and the parties from using this information for any purpose in connection with this suit or for any other purpose. Memorandum Opinion and Order dated October 11, 2016 [Docket No. 197]; Amended Memorandum Opinion and Order dated October 26, 2016 [Docket No. 210].

ATP had also discovered the identify of Pixie.RN, but independently of any information provided by her in connection with the instant motion as she filed no objections.

Without disclosing the specifics as to how they discovered the identities of duskyjewel, LadyFree28 and Pixie.RN, ATP's counsel stated that it was in part based on a "comment/suggestion" by Allnurses' counsel to the effect that "Plaintiffs must know what the other nursing forums are," information gleaned from the papers filed by duskyjewel and LadyFree28, and "the information provided by the John Doe Defendants themselves, elsewhere, using their Allnurses usernames and providing information about themselves in connection with such use...." Supplemental Declaration of Richard L. Ravin [Docket No. 225], ¶¶ 11, 14, 15; Plaintiffs' Letter Response, p. 1 [Docket No. 242] (emphasis in original).

A few days after the filing of the instant motion, ATP served another motion to compel discovery [Docket No. 172], which this Court granted and denied in part. Order dated November 28, 2016 ("Discovery Order") [Docket No. 243]. The Court denied the motion without prejudice as to any interrogatory or document request that touched on the identity of the John Does and the First Amendment issues that were the subject of ATP's renewed motion to compel. Id. The discovery impacted by this ruling was Interrogatory Nos. 1, 3-5, 11, 13 and 19 and Document Request Nos. 1-5 and 9-12. Id., pp. 5-12. The full text of these Interrogatories and Requests for Production is found at Docket No. 161, CM/ECF pp. 39; 44-54 (Interrogatories) and pp. 71-72 (Document Requests 1-9); 87 (Document Requests 10-11); and 99 (Document Request No. 12). The Court also ordered Allnurses to provide full disclosures pursuant to Rule 26(a)(1)(A)(i) and (ii) by providing the names, addresses and telephone numbers for every individual likely to have discoverable information and descriptions of the documents in Allnurses' possession. Id., p. 11. If the witness was a John Doe poster, the Court did not require Allnurses to provide any identifying information. Id., pp. 11-12. As to those requests that were impacted by ATP's motion to compel discovery bearing on the identity of the John Does, the Court indicated that if ATP prevailed on its First Amendment motion in whole or part, it could renew its request for information and documents, after an appropriate meet-and-confer with Allnurses. Id., pp. 5-7, 9-11 (impacting Interrogatory Nos. 1, 3-7, 9, 13, 15, 19 and Document Request Nos. 1-6, 9-12).

See Exhibit A attached to this Order setting forth the interrogatories and document requests at issue.

ATP noted that New Jersey and Minnesota defamation law are similar and as a result, there was no need to conduct a choice of law analysis. ATP Compel Mem., p. 16, n.4. Plaintiffs are New Jersey residents and the Allnurses website is maintained by an Allnurses employee residing in New Jersey. Id.

As noted previously, ATP took the position that the motion as to LadyFree28, Pixie.RN and duskyjewel was moot, as ATP has already determined their identity. Therefore, the specific statements at issue are those by monkeyhq and JustBeachyNurse.

Allnurses devoted several pages of its brief to describing defamation law as it relates to public figures, matters of public concern, statements by the press and the requirement of proof of actual malice. Allnurses' Opp. Compel Mem., pp. 10-12. As these issues are not relevant to the Court's recommendation regarding ATP's motion, it does not summarize them here.

As stated in footnote 10, supra, the Court granted and denied in part ATP's companion motion to compel discovery bearing on the same interrogatories and document requests at issue here. Discovery Order [Docket No. 243]. The Court denied the motion without prejudice as to any interrogatory or document request that touched on the identity of the John Does and the First Amendment issues that were the subject of the instant motion to compel. As to that discovery, the Court indicated that if ATP prevailed on its First Amendment motion in whole or part, it could renew its request for information and documents, after an appropriate meet-and-confer with Allnurses. Id., pp. 5-7, 9-11 (impacting Interrogatory Nos. 1, 3-7, 9, 13, 15, 19 and Document Request Nos. 1-6, 9-12). While this Court has concluded that ATP's motion as to Pixie.RN, LadyFree28 and duskyjewel is moot, the fact is that ATP now knows who they are and is in the same position it would have been had the Court granted its motion as to these three individuals. Therefore, ATP may proceed to pursue responses to those portions of Interrogatory Nos. 1, 3-7, 9, 13, 15, 19 and Document Request Nos. 1-6, 9-12 (reflected in Exhibit A attached to this Order) that seek identifying information and documents. However, as Allnurses had interposed a number of objections, in addition to the First Amendment objection, to these discovery requests, ATP will have to engage in the required meet-and-confer process before filing any motion to compel.

Based on the date of her post and the subsequent posts, the Court believes JustBeachyNurse meant to say July 1, 2015.

As of the date that the Second Amended Complaint was filed, the "Achieve TestPrep.... anyone?" thread remains viewable on the Allnurses website. SAC, ¶ 56.

Because context and surrounding circumstances are a critical factor in assessing whether comments are defamatory, this Court has significant reservations about the study performed by Dr. Roberts. First, while he explored the impact of the "obsolete" comment by monkeyhq, he never specifically queried the subjects of the study regarding the "redundancy" comment by JustBeachyNurse. See Roberts Decl., Ex. A (expert report), pp. 5, 36-49. Second, and more critically, he presented the test subjects with snippets of the entire thread, and not the entire thread. Id., at pp. 38-40.

In the Discovery Order, which confirmed the decision the Court had previously announced at the hearing on the motion, the Court stated that as to all of the interrogatories that sought information regarding "Allnurses Personnel," that term needed refinement. Order, p. 5. The Court then defined "Allnurses Personnel" for the purpose of Allnurses' responses to the discovery. Id. The Court defined the terms as "an individual who performs services on behalf of or for the benefit of Allnurses, whether full time or part time and whether paid or not, including employees, managers, officers, directors, agents, Brian Short and David Smits. While not explicitly including contractors, administrators, volunteers, moderators or senior moderators in the definition, the Court did not exclude such persons in those positions so long as they met the definition just described." Id.

ATP conceded that it had not cited these cases in support of its Motion to Compel and stated that it discovered the cases when conducting further research after receiving Allnurses' supplemental answers and learning that JustBeachyNurse had a been an Allnurses Moderator. ATP's Supp. Mem., p. 9, n.4. Further, ATP admitted that "the CDA is separate and distinct from the First Amendment right of anonymity and is not relevant to the Motion to Compel Discovery of the Identities of the John Doe Defendants." Id., p. 10, n.5.

The link to the "open letter" was directly below the Banner placed on Allnurses' website notifying the John Does of this suit. See PTAC, Ex. H-1.

On December 20, 2016, Judge Tunheim denied Allnurses' Motion for Judgment on the Pleadings, and directed the parties to file a letter reporting on the status of the case seven days after this Court ruled on ATP's motion to compel and the motion for leave to file a third amended complaint. Memorandum Opinion and Order, p. 3 [Docket No. 250].

As previously noted, the Court denied the request for reconsideration [Docket No. 244] and has determined in this Order that ATP's motion to compel discovery of the identities of Pixie.RN, duskyjewel and LadyFree28 is moot.